388 A.2d 698

**COMMONWEALTH of Pennsylvania**

v.

**David Wayne GREINER, Appellant.**

Supreme Court of Pennsylvania.

Argued April 14, 1977.

Decided July 14, 1978.

Daniel H. Shertzer, Lancaster, for appellant.

Michael H. Ranck, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

On July 26, 1973, a petition of delinquency was filed against appellant in the juvenile court of Lancaster County. On August 6, 1973, the district attorney filed a petition to transfer appellant's case to the Criminal Division of the Court of Common Pleas for trial on charges of criminal conspiracy, attempted murder, attempted kidnapping, burglary and aggravated assault. After a hearing, the juvenile court transferred appellant's case to the Criminal Division. Following a jury trial, appellant was convicted as charged and was sentenced to a term of imprisonment of seven to fourteen years. Post-trial motions were filed and denied, and appellant appealed to the Superior Court, which affirmed the judgment of sentence. *Commonwealth v. Greiner,* 236 Pa.Super. 289, 344 A.2d 915 (1975) (Hoffman, J., joined by Cercone, J., dissenting) (Spaeth, J., concurring and dissenting). We granted review.

The facts of this case may be summarized as follows: Appellant, who was fifteen years old at the time of the

incident,[1] became involved with his older brother and an adult, Edward Trees, in a scheme to kidnap Sandy Groff. In the early morning hours of July 26, 1973, the trio entered the Groff residence through an unlocked door and crept into a room they believed to be Sandy's bedroom. Once inside the room they awakened the person occupying the bed and discovered that person was Sandy's father. The intruders bound and gagged Mr. Groff and before leaving, beat and stabbed him. Mr. Groff, although sustaining severe injuries as a result of the encounter, recovered from his wounds.

We permitted a limited review which focused upon the propriety of the transfer hearing conducted by the juvenile court pursuant to Section 28(a) of the Juvenile Act of 1972, as amended, 11 Pa. C.S.A. § 50–325(a) (Supp.1978–79) (Juvenile Act).[2]

Appellant's argument can be reduced to two basic propositions. First, it is urged that the Commonwealth bore the burden of establishing that the statutory prerequisites for transfer of jurisdiction had been met. Second, it is argued that the Commonwealth failed to meet that burden.

■ As to the first contention concerning the placement of the burden of proof in transfer hearings, appellant asserts that placing the burden upon appellant to prove that he was a proper subject for treatment as a juvenile is a violation of due process. In making this argument, appellant relies primarily upon the seminal case of *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).[3] Because

1. Appellant was born on May 15, 1958. At the time of argument before this Court, appellant was one month short of his nineteenth birthday.

2. Pursuant to Pennsylvania Rule of Appellate Procedure 531, the Juvenile Law Center of Philadelphia filed a brief amicus curiae in support of appellant's contentions.

3. *Kent* considered the procedural rights afforded juveniles being transferred to criminal court under the District of Columbia (D.C.) Juvenile Act. *Kent v. United States, supra.* After holding that a transfer proceeding is a " 'critically important' action determining vitally important statutory rights of the juvenile," *id.* at 556, 86 S.Ct. at 1055, the Court went on to hold, *inter alia,* that the D.C. statute

we conclude that the Juvenile Act of 1972 and case law provide an adequate basis for our decision today, we need not reach the question of the federal due process requirements in this area.[4]   Section 28(a) of the Juvenile Act provides:

(a) After a petition has been filed alleging delinquency based on conduct which is designated a crime. or public offense under the laws, including local ordinances, of this State, the court before hearing the petition on its merits may rule that this act is not applicable and that the offense should be prosecuted, and transfer the offense, where appropriate, to the trial or criminal division or to a judge of the court assigned to conduct criminal proceedings, for prosecution of the offense if:

(1) The child was fourteen or more years of age at the time of the alleged conduct; and

(2) A hearing on whether the transfer should be made is held in conformity with this act; and

(3) Notice in writing of the time, place, and purpose of the hearing is given to the child and his parents, guardian, or other custodian at least three days before the hearing; and

(4) The court finds that there is a prima facie case that the child committed the delinquent act alleged, and that the delinquent act would be considered a felony if committed by an adult, and the court finds that there are reasonable grounds to believe that: (i) the child is not

when "read in the context of constitutional principles relating to due process," entitled juveniles to a hearing and a statement of reasons for the juvenile court's transfer decision. *Id.* at 557, 86 S.Ct. at 1055. Because of this and other limiting language in *Kent, see id.* at 556, 86 S.Ct. 1045, there arose a controversy among state and lower federal courts as to whether the *Kent* result was constitutionally compelled. *See Commonwealth v. Greiner,* 236 Pa.Super. 289, 303–04 n. 6, 344 A.2d 915, 922–23 n. 6 (1975) (Hoffman, J., dissenting) (authorities cited therein).

4.   The enactment of the Juvenile Act of 1972, 11 Pa. C.S.A. §§ 50–101 *et seq.* (Supp.1978–79), was a clear legislative attempt to bring Pennsylvania juvenile delinquency law into conformity with United States Supreme Court rulings. *See* Packel, A Guide To Pennsylvania Delinquency Law, 21 Vill.L.Rev. 1, 10–11 & nn. 55–56 (1975–76).

amenable to treatment, supervision or rehabilitation as a juvenile through available facilities, in determining this the court may consider age, mental capacity, maturity, previous record and probation or institutional reports; and (ii) the child is not committable to an institution for the mentally retarded or mentally ill; and (iii) the interests of the community require that the child be placed under legal restraint or discipline or that the offense is one which would carry a sentence of more than three years if committed as an adult.

11 Pa. C.S.A. § 50–325(a) (Supp.1978–79).

Although this Section sets forth the criteria which courts are to follow in making a judgment as to the propriety of the requested transfer, it does not expressly set forth the burden of proof on the respective parties in such a proceeding. In *Commonwealth v. Pyle,* 462 Pa. 613, 342 A.2d 101 (1975), this Court was faced with the procedural converse of the instant case. In *Pyle,* we were called upon to decide who should bear the burden of proof in a case where a juvenile charged with murder in adult criminal court petitioned for transfer of his case to juvenile court.[5] *Id.* 462 Pa. at 616, 342 A.2d at 106–07. We there held that in such a case, the burden was upon the juvenile to "affirmatively demonstrate that he is the kind of youth who would benefit from the special features and programs of the juvenile court system." *Id.* 462 Pa. at 623, 342 A.2d at 107. The rationale employed in reaching this result was articulated by the *Pyle* Court as follows:

"Murder has always been excluded from the jurisdiction of the juvenile courts . . . Having continued [under the Juvenile Act of 1972] to place murder, even where a young offender is involved, within the original and exclusive jurisdiction of the adult court, the assumption that the need for adult discipline and legal restraint in cases of this heinous nature also continues. With this in mind it becomes the juvenile's burden to show that he does not belong in the criminal court."

5. Section 7 of the Juvenile Act permits the transfer of such cases. 11 Pa. C.S.A. § 50–303 (Supp.1978–79).

*Id.* 462 Pa. at 622, 342 A.2d at 106 (citations and footnotes omitted).

In reaching its conclusion, the *Pyle* Court assumed that the legislature intended to place the burden of proof upon the Commonwealth where the Commonwealth sought to remove the juvenile from the jurisdiction of the juvenile court for trial as an adult.

"In such cases of delinquency, since the juvenile court is given exclusive jurisdiction in the first instance, it necessarily follows that the Commonwealth must show that the juvenile is not the proper subject for the care and solicitude of that system."

We believe that this assumption is justified. The basic question presented is one requiring a determination as to the appropriate forum for the resolution of a dispute of this nature. By the new Juvenile Act, the legislature has, in no uncertain terms, made it clear that whenever possible its provisions should control in resolving matters pertaining to juveniles.[6] While the Act envisions instances where its provisions would be inadequate and the more drastic remedies of the criminal court must be employed, it is equally clear that the preference was to treat the juvenile delinquent, whenever possible, in accordance with the procedures specially designed for the juvenile offender. In essence, the Act creates a presumption that the errant juvenile can best be supervised, directed and rehabilitated under its provisions absent evidence to the contrary. It therefore follows that the party raising the objection to the juvenile court's jurisdiction must shoulder the burden of presenting evidence to establish those facts which would warrant the conclusion that in a given case the provisions of the Act are inappropriate. To hold otherwise would create the anomalous situa-

**6.** Section 1(b)(2) provides:
"This Act shall be interpreted and construed as to effectuate the following purposes: . . . consistent with the protection of the public interest, to remove from children committing delinquent acts the consequences of criminal behavior, and to substitute therefor a program of supervision, care and rehabilitation;".
*Id.* § 50–101(b)(2).

tion whereby the party in whose favor a legislative presumption has been created is called upon to offer the evidence to support the presumption. Such a concept would be at variance with the well established principle of the law of evidence that a presumption shifts not only the burden of proof, but also shifts the burden of coming forward with the evidence to establish the fact in issue. *See generally McCormick on Evidence,* §§ 342–43 (2d Ed. 1972); *9 Wigmore on Evidence,* §§ 2490–91 (3d Ed. 1940).

The reasoning and the result reached here is in harmony with our conclusion in *Pyle.* In *Pyle,* we concluded that the legislative determination to exclude murder from the jurisdiction of the juvenile courts evidenced an assumption that the criminal justice system was the proper forum for the resolution of such matters unless the party seeking the juvenile court as a forum could establish reasons to the contrary. The converse is true in the instant case, thus the same reasoning would compel the conclusion that the Commonwealth must set forth the basis for requiring the juvenile court to relinquish its jurisdiction.

■ We now must turn to the record of the proceedings before us to determine whether the evidence offered during the course of this hearing satisfied the criteria announced in Section 28(a) thus justifying the decision of that court. We believe that the evidence presented was, as a matter of law, insufficient to establish that appellant was not amenable to treatment, supervision or rehabilitation as envisioned under the Act. The only evidence bearing upon this question was the testimony of a county probation officer who had interviewed appellant. This officer stated a number of times that appellant could be better rehabilitated through the juvenile process than the adult criminal process. In addition, the record positively reflects that appellant enjoyed a stable home life, was an above average student, and was not a discipline problem at home or at school. From a careful review of the transcript of the transfer hearing it is apparent that the only motivating factor for the decision to transfer was the nature of the crime. The Act, however,

except for the crime of murder, does not permit the nature of the conduct to justify the transfer from the juvenile system without a concomitant finding that the youth was not amenable to treatment as a juvenile. Since the record is devoid of any basis for such a finding, the court was in error in acceding to the Commonwealth's request for transfer.

Having concluded that the transfer was improper and that appellant should have remained within the jurisdiction of the juvenile court, the remaining question left to be decided is the appropriate remedy to rectify the error. The obvious implication of our holding today is that the court which convicted appellant and entered the judgments of sentence acted without authority in trying appellant as an adult. Thus, the judgments of sentence must be vacated and the appellant remanded to the custody of the juvenile court.[7]

It is so ordered.

**7.** Because we remand appellant's case to the juvenile court, we need not reach the merits of the other issues raised in this appeal.

Since appellant is not yet twenty-one years of age, and the alleged delinquent acts occurred when appellant was fifteen, he is still a "child" under the terms of the Juvenile Act, and subject to that court's jurisdiction. *Id.* § 50–102(1)(ii).