## In the Interest of William

C.P. of Clinton County, no. 47-96 Juvenile Division.

*Michael F. Salisbury, assistant district attorney,* for the Commonwealth.
*Paul J. Ryan, public defender,* for defendant minor.

SAXTON, *P.J.,* May 28, 1996—

## PROCEDURAL HISTORY

The Commonwealth filed a petition to transfer this juvenile to the criminal division of the court of common pleas. The juvenile had been charged with having committed delinquent acts by vandalizing the Lock Haven High School over the 1995 Thanksgiving holiday. Specifically, he was charged with having committed (1) criminal conspiracy to commit burglary, a felony of the third degree; (2) institutional vandalism, a felony of the third degree; (3) burglary, a felony of the third degree; and (4) causing or risking a catastrophe, a felony of the first degree.

A 72 hour detention hearing was held on May 13, 1996, and the court found sufficient evidence existed to have a full hearing under the Juvenile Code.

On May 14, 1996, the Commonwealth filed the instant petition. A hearing was held on May 21, 1996.

## DISCUSSION

A petition to transfer a case from the juvenile division to adult criminal court is governed by title 42, section 6355 of the Pennsylvania Consolidated Statutes. Section 6355 allows the court, after hearing and upon finding certain facts, to transfer a juvenile over the age of 14 to the criminal division. 42 Pa.C.S. §6355(a). The court must find all of the following:

(1) that there is a prima facie case the child committed the delinquent act alleged;

(2) that the delinquent act would be considered a felony if committed by an adult; and

(3) that there are *reasonable grounds* to believe *all* of the following:

(A) that the child is not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities, even though there may not have been a prior adjudication of delinquency . . .;

(B) that the child is not committable to an institution for the mentally retarded or mentally ill; and

(C) that the interest of the community requires that the child be placed under legal restraint or discipline or that the offense is one which would carry a sentence of more than three years if committed as an adult. 42 Pa.C.S. §6355(a)(4). (emphasis added)

This statute has recently been amended by the Pennsylvania Legislature. Act 1995-33, §7, enacted November 17, 1995. However, the acts alleged in the juvenile petition preceded the effective date of these amendments. Accordingly, the court is constrained to analyze this transfer petition using the old law and its guidelines. See Act 1995-33, §7 (providing that the amendments to 42 Pa.C.S. §6355(a)(4) and (e) take effect 120 days after the date of enactment).

The Juvenile Act, by permitting transfers to adult court, recognizes there are situations when its provisions are inadequate. *Commonwealth v. Greiner,* 479 Pa. 364, 388 A.2d 698 (1978). However, the Act also makes it clear that the preference is "to treat the juvenile delinquent, whenever possible, in accordance with the procedures specially designed for the juvenile offender." *Id.* at 370, 388 A.2d at 701. The Juvenile Act, then, "creates a presumption that the errant juvenile can best be supervised, directed and rehabilitated under its provisions *absent evidence to the contrary." Id.* (emphasis added) The Commonwealth has the burden of presenting evidence to warrant a finding the juvenile system is inappropriate, mandating transfer to criminal court. *Id.*

The court first finds William to be over the age of 14, having been born on September 7, 1979, and that all proper notice procedures have been fulfilled, including the mandated hearing. 42 Pa.C.S. §6355(a)(l)(3).

Looking at the required findings under section 6355(a)(4), the evidence presented by the Commonwealth clearly presents a prima facie case of guilt against William. William does not contest this evidence. He likewise concedes the delinquent acts alleged would be considered felonies if committed by an adult.[1] The court specifically finds, accordingly, that subsections (4)(i) and (4)(ii) of section 6355 have been proven by the Commonwealth.

The court concludes and finds, on the testimony of William's mother, that the juvenile is not committable to an institution for the mentally retarded or mentally ill. Further, due to the nature of the alleged acts and the crimes charged, the court finds that the interest of the community requires the juvenile be placed under legal restraint; the offenses in this case would carry a sentence of more than three years if committed by an adult.[2] The Commonwealth, then, has proved two factors under subsection (4)(iii).

---

1. The juvenile has been accused of several offenses which are classified as felonies under the following statutes:
Causing or risking a catastrophe—18 Pa.C.S. §3302(a);
Institutional vandalism (loss over $5,000)—18 Pa.C.S. §3307;
Burglary—18 Pa.C.S. §3502;
Conspiracy to commit burglary—18 Pa.C.S. §905(a).
2. Each offense graded as a felony of the third degree is punishable by a maximum sentence of seven years in prison; a felony of the first degree is punishable by a maximum sentence of 20 years in prison. 18 Pa.C.S. §1103.

The last consideration is whether William is "amenable to treatment, supervision or rehabilitation as a juvenile through available facilities . . . ." 42 Pa.C.S. §6355(a)(4)(iii)(A). In making this determination, the court examined the following factors: (1) the child's age, mental capacity, maturity, and previous record, if any; (2) the nature and extent of any prior delinquent history, including any previous attempts to rehabilitate the child; (3) probation or institutional reports, if any; (4) the degree of criminal sophistication exhibited by the child; (5) the nature and circumstances of the acts; (6) whether the juvenile can be rehabilitated prior to the expiration of the Juvenile Court's jurisdiction, and (7) any other relevant factors. 42 Pa.C.S. §6355(a)(4)(iii)(A).

After careful review of the above factors and a closer inspection of the hearing transcript, the court concludes the evidence submitted by the Commonwealth does not provide the court with any "reasonable grounds to believe" that William is *not* amenable to treatment.

The Commonwealth argues that, based on his age and maturity, William should take responsibility for his actions. It further argues the court must look at the sophisticated nature of the crime and the physical fact this court's supervision would expire when the juvenile turns 21 years of age. Although recognizing the validity of these arguments, we still find the Commonwealth's evidence lacking.

No probation or institutional reports were presented because, the court must assume, none exist.

The evidence presented by the Commonwealth shows William to be a mature, 16-year-old young man. Certainly his age and maturity dictate he take responsibility and pay the consequences for his actions. However,

this bare finding does not automatically require his transfer to the adult criminal system. Responsibility and consequences can be effectuated within the juvenile system. William's acknowledgment of his complicity in this matter is a positive step in showing his amenability to treatment. It suggests he can take that responsibility and accept the consequences of his participation. Further, his maturity and age may actually make him more amenable to treatment; he may better realize his good fortune at being given a second chance and avoiding the adult criminal system.

William had no past disciplinary problems. In fact, the testimony of both Assistant Principal Ray Williams and William's mother indicated he was not a discipline problem at home or at school. He has never been in the juvenile justice system.

In considering whether William is amenable to treatment, the court must consider that William has never been in trouble before and has never been exposed to the rehabilitative treatment and supervision provided by the juvenile system. This buttresses the court's belief that he will respond to juvenile supervision and treatment. Had disciplinary problems or defiant behavior been presented and proven by the Commonwealth, it is very likely this court would have reached a different conclusion.

The nature of the vandalism of the Lock Haven High School was a disgraceful act which caused loss which cannot be measured by dollars alone. The court expresses its revulsion at the desecration of an institution committed to educating the young people of the Lock Haven area of Clinton County. However, the evidence presented by the Commonwealth concludes that William was not the leader of this foray. He was a follower.

Of course, followers are still responsible for their actions. However, his degree of participation is relevant in deciding which forum should be used to address his responsibility.

There was no plan in William's mind when he left Adam Myer's apartment that November night. Each and every group has leaders as well as followers. William followed. Christopher Weaver testified that Robert Berfield and Justin Courter were the first to enter the high school. Undoubtedly, they were the leaders of this vandalism spree. Weaver said he and William did not want to go into the building and followed the others because of "peer pressure." He asserts they were both scared and nervous the entire time they were in the building. Weaver also testified that both he and William were constantly nagging at the others that they wanted to leave and it was because of the nagging that they all finally did leave.

William was not the leader nor the mastermind of this vandalism, but was pressured by the others to participate. This is the testimony presented by the Commonwealth. By recognizing the peer pressure in this situation, we are not suggesting an excuse for William's actions. Not at all. This court believes that one of the major problems in today's society is the unwillingness of individuals to take responsibility for their actions. Indeed, William could have resisted the pressure and refused to go into that building. He elected to participate and when he backed down in the face of this pressure and entered the building, he was wrong—plain and simple. Not leaving immediately after discovering what was taking place in the school made him wrong again. Participating in any degree simply exacerbates the matter. We do not and will not excuse these wrongs. However, the Commonwealth's evidence fails to show such

"criminal sophistication" by William sufficient to convince this court that he is not amenable to treatment.

This was no well-planned criminal activity. It was a stupid, devious lark that ran amok. It begot itself. There is no evidence the group entered the building for the purpose of stealing anything. Literally, there were thousands of dollars of valuable equipment which could have been easily stolen. The missing portable radios, assuming this group took them, were almost an afterthought.

Of course, this does not alter the charges. However, it cannot be ignored when addressing our responsibility of determining whether or not a juvenile participant is amenable to treatment within the juvenile system.

Colleen Wensel, juvenile probation officer, was called by the Commonwealth. She testified she believed that due to the nature of the crime, William would not be amenable to treatment. Our state Supreme Court has held that such a determination—based solely on the nature of the crime involved—is not sufficient, as a matter of law, to justify a transfer from juvenile to adult court. *Commonwealth v. Greiner, supra* at 371-72, 364 A.2d at 702. It is also important to note that Ms. Wensel admits William had never been subjected to the juvenile justice system and treatment has never had to be afforded to him.

Lastly, the Commonwealth argues there is not enough time to rehabilitate William before the jurisdiction of the juvenile court is terminated. William is currently 16 and will be 17 in September. The maximum potential sentences for these crimes for a convicted adult is quite substantial and would allow the justice system to keep a tight rein for the vast portion of the adult's life. On the other hand, the juvenile court will have jurisdiction over him until age 21 or only for approximately four

years. This, argues the Commonwealth, is not enough time. Of course, this is a fine argument. It is one that suits the temperament of the community at this moment. However, it is an emotional argument, not supported by required evidence. The court cannot resolve this matter on any emotional level and will not do so. And, inasmuch as a juvenile is involved, if there is an error to be made, it will be made in favor of potential rehabilitation rather than to long-term incarceration and lifelong supervision.

The Commonwealth offers no evidence in support of its argument. The record reflects William to be an above-average student with no past disciplinary problems. He has ambitions and has planned for his future. He hopes to work in the plumbing field. In furtherance of this goal, he enrolled in vo-tech classes while in high school. These are indicators that William would respond positively to treatment and supervision. The Commonwealth presented no evidence to the contrary.

## CONCLUSION

The Commonwealth has not met its burden of proving that William is not amenable to treatment, supervision and rehabilitation in the juvenile system. With a less than enthusiastic conclusion, the court denies the Commonwealth's petition. This matter will be resolved within the confines of the prevailing Juvenile Code.

## ORDER

The Commonwealth's petition to transfer William to the adult division of the court of common pleas is denied and it is hereby ordered an adjudication hearing be held on Friday, May 31, 1996, at 1:30 p.m., in courtroom no. 2.