## Commonwealth v. Allen[1]

---

1. This caption includes the following cases: Andrew Allison (9607-403 2/2), Brian Beulah (9608-12, 9608-26 2/3, 9808-50 2/3), Jose Blas (9605-702), Thomas Broaster (9607-452), Shelton Butler (9604-518, 9604-519, 9604-520, 9604-521), Jenelle Carson (9604-1322 2/2), Devon Coffee (9605-136), Tyson Combs (9606-201), Marcelino Cortes (9607-1127), Anthony Cottnell (9606-1127), Ode Coyett (9607-1072), Romaine Cromwell (9606-791 2/3) Williard Daniels (9606-458 2/2), Christopher Davis (9606-512, 9607-1082), Robin Devon (9608-31 1/2), Brian Heard (9606-458 1/2), Robert Hill (9606-680), Willie Jacobs (9605-621), Thomas Johnson (9604-216), Yusef Kelly (9606-746), William Lewis (9608-941 3/3), Jerry Macey (9606-1176), Keyot Marks (9607-1255 1/3), Dwight Marshall (9605-669), Lamar McAllister (9607-697), Brian McArthur (9605-772), William

McCurdy (9605-123), Wilfredo Orsini (9606-122), Ricardo Ramos (9604-1165), Walter Rivera (9604-938), Anthony Rosario (9604-465 1/3), Kasan Sanders (9606-861), Alfred Santiago (9604-465 3/3), Braheem Slaughter (9606-722), Kyle Taylor (9608-26 1/3, 9608-50 1/3), Douglas Thomas (9605-153), Nieem Thomas (9605-520), Jamilah Tucker (9604-1322 1/2), Jasaan Walker (9606-720), David Warren (9606-1108), Samuel Watkins (9606-216, 9606-760, 9606-761, 9607-59), Devin Williams (9607-1255 2/3), Shannon Williams (9606-137), Sharon Williams (9608-31 2/2), Joseph Wilson (9604-928), and Joseph Young (9605-624).

*John Delaney, assistant district attorney,* for the Commonwealth.

*William S. Fox,* for defendants.

TEMIN, *J.,* November 15, 1996—This matter comes before the court in its role as chief criminal calendar judge on 57 identical pretrial motions asking this court to declare the Juvenile Act, 42 Pa.C.S. §6301 et seq., as amended by Act 1995-33 (SS1), unconstitutionally vague. The matters have been consolidated for purposes of briefing and argument.[2] Arguments were heard on September 12, 1996, and the matter was held under advisement. For the reasons discussed below, the motions are denied.

Criminal matters involving juveniles in Pennsylvania are governed by the Juvenile Act. 42 Pa.C.S. §6301 et seq. The Act was recently amended in a special session of the legislature convened by Governor Thomas J. Ridge on January 23, 1995 to address issues of crime and public safety. Specifically, the legislature was directed to consider "reduction of juvenile crime by reforming the system and laws relating to crimes committed by juveniles." The amendments contained in Act 1995-33 (SS1) substantially changed section 6301(b) (relating to the purposes of the Act), section 6302 (relating to the definition of a delinquent act), section

---

2. All defendants joined in the brief submitted by the Defender Association of Philadelphia.

6352 (relating to disposition of delinquent child), and sections 6322 and 6355 (relating to transfer to and from criminal proceedings). The effect of the amendments was to decrease the jurisdiction of juvenile court by specifying that juveniles who committed specific offenses be charged directly in adult criminal court. Under the prior Act, juveniles who committed criminal offenses (other than murder) were under the jurisdiction of juvenile court. 42 Pa.C.S. §6302 (amended 1995). At the special session, the legislature excluded from the jurisdiction of juvenile court certain enumerated felony offenses committed by juveniles age 15 or older when a deadly weapon is used or the charge constitutes a second offense. 42 Pa.C.S. §6302.

Prior to the amendments, section 6301(b) of the Juvenile Act stated:

"This chapter shall be interpreted and construed as to effectuate the following purposes:

"(2) Consistent with the protection of the public interest, to remove from children committing delinquent acts the consequences of criminal behavior, and to substitute therefor a program of supervision, care and rehabilitation." 42 Pa.C.S. §6301(b) (amended 1995).

Once a child was found to be delinquent, the juvenile court was authorized to make orders of disposition that were "best suited to his treatment, supervision, rehabilitation, and welfare." 42 Pa.C.S. §6352 (amended 1995). Both section 6301(b) and section 6352 were substantially altered by the recent amendments. Rather than focusing solely on the treatment, supervision, and rehabilitation needs of the child, the legislature substituted the following language:

"(2) Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation

which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community." 42 Pa.C.S. §6301(b).

This same language is repeated in section 6352, which authorizes the juvenile court to make "orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation, and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to" the factors specified in section 6301(b). 42 Pa.C.S. §6352.

As under the prior Act, the amended Act retains a "safety valve" or transfer mechanism by which a juvenile directly charged as an adult may petition the court for transfer to juvenile court. 42 Pa.C.S. §6322. Previously, a child charged directly as an adult could be transferred back if the child could show that he was "amenable to treatment, supervision or rehabilitation as a juvenile." 42 Pa.C.S. §6322 (amended 1995). In deciding whether or not to transfer a case to juvenile court, the court was to consider the criteria listed in section 6355(a)(4)(iii)(A) (amended 1995): age; mental capacity; maturity; the degree of criminal sophistication exhibited by the child; previous records if any; the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child; whether the child can be rehabilitated prior to the expiration of the juvenile court's jurisdiction; probation or institutional reports if any; the nature and circumstances of the acts for which the transfer is sought; and, any other relevant factors. At the special session, the leg-

islature amended this transfer process by establishing a burden of proof, changing the standard to be used, and specifying additional criteria to be considered by the court.

Under the amended Act, the child "shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest." 42 Pa.C.S. §6322. In determining whether the child has borne this burden, the court is to be guided by the following factors (some of which are the same as factors considered under the prior Act):

"(A) the impact of the offense on the victim or victims;

(B) the impact of the offense on the community;

(C) the threat to the safety of the public or any individual posed by the child;

(D) the nature and circumstances of the offense allegedly committed by the child;

(E) the degree of the child's culpability;

(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and,

(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

(I) age;

(II) mental capacity;

(III) maturity;

(IV) the degree of criminal sophistication exhibited by the child;

(V) previous records, if any;

(VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

(VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

(VIII) probation or institutional reports, if any;

(IX) any other relevant factors." 42 Pa.C.S. §6355(a)(4)(iii).

The defendants argue that the term "public interest" as used in the transfer standard in sections 6322 and 6355 is unconstitutionally vague because the legislature did not specify or explain which "public interest" is served by transferring the child to juvenile court for disposition.

In assessing whether the use of the term "public interest," without more renders the statute unconstitutionally vague, the court must apply the following standard:

"A law is void on its face if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. . . . In reviewing a void for vagueness challenge, we must consider both the essential fairness of the law and the impracticability of drafting the legislation with greater specificity. . . . Further, we note the strong presumption of constitutionality . . . of an act of the general assembly. . . . Legislation will not be declared unconstitutional unless it clearly, palpably, and plainly violates the constitution and a mere showing of difficulty in determining whether conduct is within that definition will not suffice to meet this heavy burden." *Commonwealth v. Sterling*, 344 Pa. Super. 269, 275-76, 496 A.2d 789, 792 (1985).

The party seeking to have a law declared unconstitutional has the burden of proving beyond all doubt that it is so, and any doubts must be resolved in favor of constitutionality. A statute is not unconstitutionally

vague merely because clearer and more precise language could have been used, and it will not be held invalid on grounds of uncertainty if it is susceptible of any reasonable construction that will support and give it effect. *Willcox v. Penn Mutual Life Insurance Co.*, 357 Pa. 581, 55 A.2d 521 (1947).

It is well settled that the objective of statutory interpretation and construction is to ascertain and effectuate the intention of the legislature as expressed by the words employed. 1 Pa.C.S. §1921(a). Where a term in a statute is not defined by the legislature, the court must apply the rules of statutory construction. *Browning-Ferris Inc. v. Department of Environmental Resources*, 143 Pa. Commw. 243, 598 A.2d 1057 (1991). In determining legislative intent, the court may consider the following factors: (1) the occasion and necessity for the statute; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other statutes upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and, (8) legislative and administrative interpretations of such statute. 1 Pa.C.S. §1921. Since Act 1995-33 (SS1) decreases the jurisdiction of the juvenile court, its provisions must be strictly construed. 1 Pa.C.S. §1928(b)(7).

As a general principle of statutory construction, a change in the language of a statute ordinarily indicates a change in the legislative intent. *Masland v. Bachman*, 473 Pa. 280, 374 A.2d 517 (1977). The legislature's recent amendments to the purposes and jurisdiction of the Juvenile Act constitute just such a change. The Pennsylvania Supreme Court has interpreted the legislative intent underlying the Juvenile Act prior to the recent amendments:

"[In enacting the Juvenile Act] the legislature has, in no uncertain terms, made it clear that whenever possible its provisions should control in resolving matters pertaining to juveniles. While the Act envisions instances where its provisions would be inadequate and the more drastic remedies of the criminal court must be employed, it is equally clear that the preference was to treat the juvenile delinquent, whenever possible, in accordance with the procedures specifically designed for the juvenile offender. In essence, the Act creates a presumption that the errant juvenile can best be supervised, directed and rehabilitated under its provisions absent evidence to the contrary." (footnote omitted) *Commonwealth v. Greiner*, 479 Pa. 364, 370, 388 A.2d 698, 701 (1978).

The legislature has now reversed this initial presumption by designating the exclusion of enumerated felony offenses committed with a deadly weapon or as a second offense from the jurisdiction of juvenile court. In the amended statute, the legislature has created a new presumption that the juvenile offender charged with one of the enumerated offenses belongs in the adult system and must prove by a preponderance of the evidence that his/her transfer back to the juvenile system will serve the "public interest."

Under the rules of statutory construction, a word or phrase which has clear meaning when used in one part of a statute will be construed to have that same meaning elsewhere in the same section of the statute. *Buchko Unemployment Compensation Case*, 196 Pa. Super. 559, 175 A.2d 914 (1961). In addition, when interpreting the Juvenile Act, each individual provision should not be read in the abstract, but rather must be construed with a view to its place in the entire legislative structure of the Act. *In the Matter of T.R.*, 445 Pa.

Super. 553, 665 A.2d 1260 (1995); *In Interest of M.L.E.*, 429 Pa. Super. 248, 632 A.2d 329 (1993). Thus, this court must conclude that the term "public interest" as used in the newly amended sections 6322 and 6355 necessarily relates back to the definition of that term in sections 6301(b)(2) and 6352.

This interpretation is consistent with the legislative intent underlying the recent amendments. The expansion of the number of offenses for which a juvenile must be charged as an adult and the toughening of the standard relating to transfer back to juvenile court was a response to a concern that the juvenile system was no longer able to deal effectively with the increasing number of violent crimes committed by juvenile offenders. The following comments from the legislative history are relevant:

"I think that as you look across Pennsylvania, when you look at the statistics on crime, both adult and juvenile crime, when you look at the perceptions of the general public across Pennsylvania, people are fed up with violent crime, and they are particularly fed up with violent crime that has been committed and continues to be committed in this Commonwealth by juveniles. The young thugs across this Commonwealth who have held people hostages [sic] in their homes and in their streets and neighborhoods will come to an end. Hopefully, it will be somewhat abated by the passage of this legislation.

"What this bill does is carries through on a theme that was echoed by Governor Ridge, both as a candidate and in announcing this session, which basically says that if you commit adult crime, you are going to do adult time. . . .

"One of the criticisms of the current juvenile justice system is the fact that many juveniles . . . are back

in the community oftentimes before a victim heals from the injuries they have suffered, and under this bill that is going to change. Under this bill, if a person 15 years of age or older commits that adult crime, they are going to be tried and they are going to be sentenced, whether it be a sentence of imprisonment of five to 10 years, or perhaps even more, to serve time that is not only going to be rehabilitative but that is going to be the appropriate punishment for the crime that has been committed . . . [J]uveniles who are the violent offenders, who have proved they have not been amenable to treatment under the juvenile system, will, therefore, be handled by adult court. . . .

"[T]his is a sensible step in amending the juvenile justice system across Pennsylvania. It is a sensible step that is going to say to the people of Pennsylvania who are tired of being held up, who are tired of being robbed by young juveniles who are committing crimes and getting off like other juveniles, it is a sensible step that is gong [sic] to say that that is going to end." (1995 Legislative Journal no. 41, at 227-28.) (Statement of Sen. Fisher, June 19, 1995.)

"When the House and the Senate and the governor embarked on the special session on crime and set forth several goals in the area of juvenile justice, there were several factors that we were dealing with. One was that there has been an increased incidence of juvenile crime overall; secondly, there has been an increased incidence of violent juvenile crime and repeat violent juvenile crime; and thirdly, we have seen violent juvenile crime being committed at a younger and younger age.

"Given those factors and given the fact that the current juvenile system appeared to be incapable of dealing with those juveniles who are increasingly committing violent offenses with deadly weapons and repeatedly

committing violent offenses generally, we decided that it was a waste of resources of the juvenile system to attempt to deal with them as juveniles, and as everyone knows, the juvenile system makes the presumption that everyone subject to it can or should be rehabilitated or treated and is amenable to treatment, and the only way that you can get out of the juvenile system presently, other than committing a murder where you are directly filed, is by having the district attorney request a transfer and requiring the district attorney to prove that the juvenile is not amenable to treatment.

"Given all of those facts, it was determined by the Senate and the House Judiciary Committee—and we held several hearings on this subject generally—that we should carve out a fairly narrow range of violent offenses, offenses committed with a deadly weapon and offenses committed for the second time after a juvenile has been adjudicated delinquent for violating the law in that regard, and make the decision that those juveniles should no longer be treated as juveniles, that they have been given the chance to be subject to the juvenile system—they have been given that one chance—and that we are going to require that they subject themselves or be subjected to the adult system." (1995 Legislative Journal no. 61, at 436.) (Statement of Rep. Piccolla, October 17, 1995.)

"[T]he changes that are contained in Senate Bill no. 100 will, in fact, be dramatic and major changes for the juvenile justice system in Pennsylvania. Those people 15 years or older who commit a second violent crime or who commit a violent crime using a firearm are going to be tried as adults, and I believe that is what the people of Pennsylvania have been telling us. The juvenile justice system, when it was originally set up, was set up to handle youngsters who got caught

up in car thefts or burglaries or purse snatchings, or some other minor violations of the law, but, in fact, what we are finding today is the rise in crime in Pennsylvania has been caused as a result of the rise in violent crime among juveniles. I believe this bill, Senate Bill no. 100, directly attacks that problem. It is going to say to those juveniles that once arrested, they are going to be tried in the adult justice system. If they are convicted, they are going to be sentenced to a long period of time in jail, just as an adult offender would." (1995 Legislative Journal no. 57, at 305.) (Statement of Sen. Fisher, October 25, 1995.)

"The time was when the juvenile court system properly tried to rehabilitate minor youthful offenders and steer them back on the right track. That was 100 years ago. Times have changed . . . [T]he law is now stacked for juvenile offenders, and this bill unstacks that deck. This protects innocent members of society and recognizes that when you are the victim of a violent crime, it does not matter to you whether the rapist or the armed robber or the murderer is 15 or 55 . . . [Y]ou will hear from the victims of crime how threatened and how insecure and how terrorized, whether by gangs or individual juvenile offenders who know that if they are caught, because of their age, they are going to be treated with kid gloves. They thumb their nose at the law, they realize juvenile court has been a closed, take-care-of-the-kid kind of proceeding, and that attitude has to change." (1995 Legislative Journal no. 57, at 305.) (Statement of Sen. O'Pake, October 25, 1995.)

The legislative history details the legislature's intent that there be a "safety valve" or transfer mechanism by which a court can direct that the child be treated as a juvenile in appropriate cases:

"[T]here are the appropriate checks and balances in this bill which will allow the adult court judges to say maybe when we set some hard-and-fast rules, maybe someone was transferred who could be better treated in the juvenile justice system. There are some checks and balances which will allow the court to determine if, in fact, some cases should be sent back, but there are also provisions contained within the bill which will give the district attorneys and assistant district attorneys the right to contest those rulings that they do not believe are the right ones." (1995 Legislative Journal no. 41, at 228.) (Statement of Sen. Fisher, June 19, 1995.)

"There is a safety valve within the bill to allow a juvenile to try to prove that he should be put back into the juvenile system. If he can meet the burden under that safety valve, he can ask the court to put him back into the juvenile system." (1995 Legislative Journal no. 61, at 436.) (Statement of Rep. Piccolla, October 17, 1995.)

"[I]n the proper case, even though the juvenile is certified to adult court for treatment and trial as an adult criminal, there is a safety valve in that the juvenile can request a transfer back to juvenile court if he can prove to the satisfaction of the judge that it is in the best interest of society that he be treated as a juvenile because of his age." (1995 Legislative Journal no. 57, at 305.) (Statement of Sen. O'Pake, October 25, 1995.)

Thus, a transfer back to juvenile court under 42 Pa.C.S. §6322 is in the "public interest" when, considering all of the criteria enumerated in section 6355, the court is convinced by a preponderance of the evidence that the child is amenable to treatment, supervision, and rehabilitation as a juvenile, treatment as a juvenile is consistent with the legislature's intent to hold the child accountable for his/her offenses, and

236

treatment as a juvenile does not jeopardize the public safety.

The defendants have not borne the burden of proving beyond all doubt that the Juvenile Act as amended by Act 1995-33 (SS1) is unconstitutionally vague. The motions are properly denied.