## In re Clarke

C.P. of Butler County, J.D. no. P150 of 2003.

*Gerald L. Cassady,* for Commonwealth.
*Michael J. Pawk,* for defendant.

DOERR, *P.J.,* May 5, 2003—Before this court is the Commonwealth's motion to transfer to criminal court.

## BRIEF FACTUAL BACKGROUND

Cody Wayne Clarke, born May 1, 1984, is 17 years of age. On April 3, 2003, an allegation was filed with Butler County Juvenile Court Services alleging that Mr. Clarke, then 16 years of age, committed criminal acts in violation of 75 Pa.C.S. §3735, homicide by vehicle while driving under the influence (F2), 75 Pa.C.S. §3735.1, aggravated assault by vehicle while driving under the influence (F2) along with related misdemeanor and summary charges. On April 7, 2003, a delinquency petition was filed based on these allegations. The delinquency petition alleged that Mr. Clarke, on March 29, 2003, was driving a 1998 Ford Expedition on SR 356, approximately 1/10 mile south of Marwood Road, Jefferson Township, Butler County, with a blood alcohol level of 0.02 percent or greater, specifically 0.097 percent. The petition further alleged that Mr. Clarke unintentionally caused the death of Jacob Lehnerd and negligently caused serious bodily injury to Tracy Lehnerd, the mother of Jacob.

On April 23, 2003, the Commonwealth filed a motion to transfer to criminal court and requested that a hearing be scheduled to determine whether transfer would be appropriate. The Commonwealth also requested that the pre-adjudication hearing scheduled for April 24, 2003, be cancelled. By order of April 23, 2003, this court scheduled the transfer hearing for May 2, 2003.

## LEGAL STANDARD

A court may determine that transfer of the offense to criminal proceedings is appropriate where all of the following exist:

(1) The juvenile is 14 years old or older at the time of the alleged delinquent act;

(2) A hearing on whether the transfer should be made is held in conformity with this chapter;

(3) Notice in writing of the time, place, and purpose of the hearing is given to the child and his parents, guardian or other custodian at least three days before the hearing;

(4) The court finds:

(i) that there is a prima facie case that the child committed the delinquent act alleged;

(ii) that the delinquent act would be considered a felony if committed by an adult;

(iii) that there are reasonable grounds to believe that the public interest is served by the transfer of the case for criminal prosecution by considering all the relevant factors; and

(iv) that there are reasonable grounds to believe that the juvenile is not committable to an institution for the mentally retarded or mentally ill. See 42 Pa.C.S. §6355.

## LEGAL ANALYSIS

The foundation of Pennsylvania's Juvenile Act consists of five principles: community protection, accountability, competency development, individualization and balance.[1] Each principle is designed to implement a balanced approach for restorative justice. Restorative justice focuses on repairing the harm done to victims and

---

1. James Anderson & Susan Blackburn, *Pennsylvania Juvenile Justice: A Commitment to Community Protection, Victim Restoration & Youth Redemption,* NJCSA Rapport, no. 2 at 1-2 (2003).

communities.[2] Offender accountability, under a restorative justice theory, is defined in terms of assuming responsibility and acting to repair harm.[3] "Restorative justice emphasizes the importance of elevating the role of crime victims and communities in the process of holding offenders accountable for their behavior, while offering offenders the opportunity to make amends directly to the people and community they violated."[4] Therefore, victim and offender restoration are viewed as goals of community justice with the intent of improving the quality of life and increased safety.[5]

This philosophy served as the basis for Legislative Act 33 which provided for one of the most important provisions of Pennsylvania's Juvenile Code and is considered to have redefined the mission of Pennsylvania's juvenile justice system:[6]

"Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community." 42 Pa.C.S. §6301(b)(2).

---

2. *Balanced and Restorative Justice in Pennsylvania: A New Mission and Changing Roles within the Juvenile Justice System,* Report of Juvenile Court Judges' Commission (March 1997).

3. *Id.* at 3.

4. *Guide for Implementing the Balanced and Restorative Justice Model,* Report of Office of Juvenile Justice and Delinquency Prevention, U.S. Department of Justice at 53 (December 1998).

5. *Id.* at iii.

6. Anderson, *supra,* note 1.

This provision demonstrates the juvenile justice system's realization that equal attention to the offender, victim and community is essential for goal achievement, unlike that of a retributive justice system where the crime is treated as against the government, punishment is imposed and the victim has a passive voice. Equal attention to those involved is necessary because of the group of individuals directly affected by these laws, the children.

Children and adults differ significantly in many ways. The line between childhood and adulthood is not one that can be measured by an objective standard as every individual reaches a level of maturity and responsibility at a different time. Responsibility cannot be defined by life events, such as having passed a driver's test or graduating from high school.[7] Responsibility in terms of wrongdoing means "that juveniles know right from wrong, have developed a social conscience, feel guilt or remorse for their actions, are mentally aware enough to know the rules, do not have any disease that reduces their ability to get along in society, fully understand that their actions are harming others and are emotionally mature."[8]

Laws, such as Pennsylvania's Juvenile Justice Act, that are rooted in an understanding of the importance of maturity and responsibility, provide the necessary means for determining whether a child who committed a delinquent act should be treated in the juvenile system or subjected to criminal prosecution as an adult. The Juvenile Act makes it clear that the preference is to treat the juve-

7. Clemens Bartollas & Stuart J. Miller. Juvenile *Justice in America* 116 (1994).
8. *Id.* at 117.

nile delinquent whenever possible in accordance with procedures specifically designed for the juvenile offender. *Commonwealth v. Greiner,* 479 Pa. 364, 370, 388 A.2d 698, 701 (1978). The Juvenile Act then creates a presumption that the errant juvenile can best be supervised, directed and rehabilitated under its provisions absent evidence to the contrary. *Id.*

With the above principles in mind, this court now considers the applicable law and circumstances of this matter. Two phases exist in a transfer hearing: the prima facie phase and the public interest stage. During the transfer hearing, this court ruled that a prima facie case was established. This court noted that Mr. Clarke was over the age of 14 at the time of the alleged conduct. Furthermore, this court found, based on the testimony presented, that sufficient evidence was presented to establish that on March 29, 2003, Mr. Clarke operated a 1998 Ford Expedition while under the influence of alcohol, with a blood alcohol content of 0.02 percent or greater, that is, 0.097 percent. This court further found that sufficient evidence was presented establishing that Mr. Clarke's vehicle collided with the vehicle driven by Tracy Lehnerd and that the collision caused injury to Tracy Lehnerd and the death of Jacob. In addition, this court notes that the parties stipulated to the fact that Jacob Lehnerd's death resulted from injuries incurred from the collision.

During the transfer hearing, this court also found that the delinquent acts committed by Mr. Clarke would be considered a felony if committed by an adult. Mr. Clarke was alleged to have committed delinquent acts in violation of 75 Pa.C.S. §3735, homicide by vehicle while driving under the influence (F2), 75 Pa.C.S. §3735.1, aggra-

vated assault by vehicle while driving under the influence (F2) along with related misdemeanor and summary charges. Based on the nature of the delinquent acts and applicable law, it is clear that the delinquent acts would be considered a felony if committed by an adult.

Because a prima facie case was established during the hearing, this court must now determine whether reasonable grounds exist for this court to find that transfer of the case serves the public interest. This court is to consider the following factors when determining whether the public interest can be served:

(A) the impact of the offense on the victim or victims;

(B) the impact of the offense on the community;

(C) the threat to the safety of the public or any individual posed by the child;

(D) the nature and circumstances of the offense allegedly committed by the child;

(E) the degree of the child's culpability;

(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

(i) age;

(ii) mental capacity;

(iii) maturity;

(iv) the degree of criminal sophistication exhibited by the child;

(v) previous records, if any;

(vi) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

(vii) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

(viii) probation or institutional reports, if any;

(ix) any other relevant factors.

The Commonwealth bears the burden of establishing by a preponderance of the evidence that the public interest is served by the transfer of the case to criminal court and that the juvenile is not amenable to treatment, rehabilitation and supervision in the juvenile system unless:

(1) a deadly weapon as defined in 18 Pa.C.S. §2301 was used and the child was 14 years of age at the time of the offense; or the child was 15 years of age or older at the time of the offense and was previously adjudicated delinquent of a crime that would be considered a felony if committed by an adult; and

(2) there is a prima facie case that the child committed a delinquent act that, if committed by an adult, would be classified as a rape, involuntary deviate sexual intercourse, aggravated assault as defined in 18 Pa.C.S. §2702(a)(1) or (2) (relating to aggravated assault), robbery as defined in 18 Pa.C.S. §3701(a)(1)(i), (ii) or (iii) (relating to robbery), robbery of motor vehicle, aggravated indecent assault, kidnapping, voluntary manslaughter, an attempt, conspiracy or solicitation to commit any of these crimes or an attempt to commit murder as specified in paragraph (2)(ii) of the definition of "delinquent act" in 42 Pa.C.S. §6302.

If the preceding criteria are met, then the burden should rest with the juvenile. See 42 Pa.C.S. §6355(g).

First, this court addresses whether the Commonwealth has the burden in this matter. While Mr. Clarke was 16 years old at the time of the offense, he has never been previously adjudicated delinquent of a felony crime nor was a deadly weapon used, as defined in 18 Pa.C.S. §2301. The Commonwealth argues that it does not have the burden, in this phase of the proceeding, because Mr. Clarke used a deadly weapon, his vehicle, when committing the delinquent act. 18 Pa.C.S. §2301 defines a deadly weapon as:

"Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury."

Based on a review of the applicable law and facts, this court finds no merit in the Commonwealth's argument. As to subpart two, the delinquent acts allegedly committed by Mr. Clarke are not set forth. Accordingly, this court finds that the Commonwealth bears the burden of proving that transfer of this case to criminal court is warranted. However, this court finds that even if the burden was placed on Mr. Clarke, this court would not be convinced that transfer for criminal prosecution is justified. As discussed below, this court finds that it does not have reasonable grounds to believe that transfer of this case for criminal prosecution serves the public interest.

First, this court considers the impact of the offense on the victim or victims as well as the impact of the offense on the community. It is without question that the loss of a life, especially that of a child's, has a very great impact

on the child's family as well as the community. The lives of the Lehnerd family have been changed forever. Jacob's life can never be replaced. Tracy Lehnerd's life will never be the same, not only because of the death of her child but by her own injuries and involvement. The emotion present in the courtroom is indicative of this impact and of how this tragic incident greatly affected many people, including Cody Wayne Clarke.

This court takes notice of the letters to the editor and cards and letters received by the Clarke family as symbolic of the interest the community has taken in this matter. This court noted during the hearing that these letters would be admissible for that limited purpose and that this court would not consider the content of these letters when making its decision.

While this court recognizes the importance of these two factors, the emotional impact on the parties and community are not the controlling factors in this analysis. This court emphasizes that these two factors are only two amongst seven, all of which must be considered equally.

Next, this court focuses on the threat to the safety of the public or any individual posed by Cody Clarke. Based on the testimony presented, this court finds that Mr. Clarke is not a threat to public safety or any individual. Testimony was presented by various individuals regarding Mr. Clarke's character and past history. Lou Ann Byrnes, guidance counselor at Knoch High School, and two teachers, Leslie Shoop and Brad Phlugh, all testified that Mr. Clarke is a hard working, respectful and quiet student with no discipline problems. In fact, Mr. Phlugh testified that he often sent Mr. Clarke on class errands.

Kathy Hoffmeister, intake supervisor for Butler County Juvenile Services, testified that Mr. Clarke has a low degree of criminal sophistication. Ms. Hoffmeister testified that Mr. Clarke was previously involved in only a minor school incident, possession of tobacco, for which he was suspended for three days. She further stated that Mr. Clarke does not have a history of discipline problems at school and has had no previous delinquent acts. Ms. Hoffmeister testified that Mr. Clarke's actions were not intentional, and that Mr. Clarke has been cooperative with authorities throughout the investigation.

Dr. Alan Pass testified as an expert witness in this matter. Dr. Pass testified that Mr. Clarke comes from an intact, supportive family. Mr. Clarke does not have a history of emotional or health problems. Dr. Pass found no dependency usage patterns or drug use or experimentation. Dr. Pass also testified that Mr. Clarke has accepted responsibility for his reckless actions and has not displaced responsibility in any manner. Furthermore, Dr. Pass stated that Mr. Clarke has shown great remorse. Dr. Pass concluded that Mr. Clarke is a low risk to the community for re-offending.

This court finds Dr. Pass to be a very credible witness and places great weight on Dr. Pass' conclusion that Mr. Clarke is a low risk to the community.

This court now considers the nature and circumstances of the offense allegedly committed by Cody Clarke and the degree of his culpability. This court hereby incorporates its above discussion regarding the nature and circumstances of the offenses. Driving under the influence of alcohol, homicide by vehicle and aggravated assault by vehicle are serious offenses. In determining whether

to order a juvenile to be tried as an adult, the court may not justify the transfer based solely on the nature of the crime charged and nothing else. *Commonwealth v. Greiner*, 479 Pa. 364, 388 A.2d 698 (1978). This court notes the importance of the nature of the charges in this matter. Specifically, that Mr. Clarke was not charged with committing acts of specific intent but rather, acts of recklessness. As previously stated, this court finds that a prima facie case has been established and that the evidence presented is sufficient to establish that the juvenile is culpable of the named offenses.

Next, this court considers the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system. Adult institutions differ significantly from juvenile facilities. Overcrowding, violence, exploitative relationships and exposure to drugs and disease are prevalent in adult institutions.[9] Studies have found that youths imprisoned in adult institutions are five times more likely to be sexually assaulted, twice as likely to be beaten by staff, and 50 percent more likely to be attacked with a weapon than those youths in a juvenile facility.[10] Efficient and effective treatment programs are almost nonexistent.[11] In juvenile facilities, hard-core offenders are not present to corrupt younger offenders.[12] Furthermore, because of the absence of hard-core offenders, juvenile facilities are able to focus on treatment on more amenable youths.[13]

---

9. Bartollas, *supra,* note 7 at 125.

10. Juvenile Justice Reform Initiatives in the States, 1994-1996, {HYPERLINK http://ojjdp.ncjrs.org} at 12.

11. Bartollas, *supra,* note 7 at 125.

12. *Id.* at 127.

13. *Id.*

Michael Weaver, of SCI Pinegrove, testified that juveniles between the ages of 15 and 18, who are transferred to the criminal system and sentenced, are housed at SCI Pinegrove until the age of 22. Mr. Weaver testified that SCI Pinegrove has a drug and alcohol program consisting of three tracts, a GED program and college or vocational courses. Under the three-tract program, tract one consists of drug and alcohol education and awareness. Tracts two and three provide more intensive treatment. Mr. Weaver also testified that the drug and alcohol program cannot be measured as to recidivism because the program has not been in place long enough. Mr. Weaver also testified that no purpose exists to place a juvenile without an alcohol or substance problem in tracts two and three of the program. Although this court commends the Commonwealth for the development of SCI Pinegrove, it notes that placement in that facility is beyond the control of this court. While the present policy of the Bureau of Corrections may favor such a placement, future funding and prison population growth may not permit it.

In addition to Mr. Weaver's testimony, Ms. Hoffmeister testified as to potential placement with four programs. Dr. Pass suggested intensive counseling and random substance testing and education. Under the juvenile system, various adequate alternatives exist, including placement in a juvenile facility, treatment for drug and alcohol abuse and counseling. In the juvenile system, the duration of these alternatives could last for four years, until Mr. Clarke reaches the age of 21. Under the adult criminal justice system, if sentenced, Mr. Clarke would serve a minimum mandatory sentence of three to six years in prison. Therefore, Mr. Clarke's imprisonment in a state

facility could last for a lesser amount of time than if he was placed in a juvenile facility. Furthermore, if sentenced as an adult, Mr. Clarke would most likely not receive adequate treatment in the state facility, which would be extremely detrimental when considering he is only 17 years old. A CECP study, analyzing recidivism rates of juveniles prosecuted in Florida criminal courts, found that youths, prosecuted as adults, are more likely to commit additional crimes and more serious offenses upon release than those individuals who remained in the juvenile system.[14]

Finally, this court considers whether Cody Clarke is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

(i) age;

(ii) mental capacity;

(iii) maturity;

(iv) the degree of criminal sophistication exhibited by the child; previous records, if any;

(v) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

(vi) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

(vii) probation or institutional reports, if any;

(viii) any other relevant factors.

Based on the testimony presented, this court makes the following findings: Mr. Clarke is 17 years old. He is of average mental capacity and maturity and possesses a

---

14. Juvenile Justice Reform Initiatives in the States, *supra*, note 10 at 4.

very low degree of criminal sophistication. He does not have prior record or delinquent history.

Dr. Pass, Ms. Hoffmeister and Ms. Josie Morgano of Pyramid, all testified that Mr. Clarke is amenable to treatment. Therefore, based on the above factors and opinions presented, this court finds that Mr. Clarke can be adequately rehabilitated prior to the expiration of the juvenile court's jurisdiction.

The last issue for this court to consider is whether reasonable grounds exist to believe that the juvenile is not committable to an institution for the mentally retarded or mentally ill. Based on the above discussion, this court finds that no reasonable grounds exist to determine that Mr. Clarke is committable to an institution for the mentally retarded or mentally ill.

## CONCLUSION

Mr. Clarke is considered a juvenile under the legal system, meaning that specific legal principles and standards are applicable in this matter. The Juvenile Act emphasizes a balanced approach to resolution, accomplishing a result that will best serve the offender, victim and community. Mr. Clarke is a 16-year-old youth who made a poor decision which resulted in a horrible tragedy. He is a good student, an athlete and he does not have a prior record. Not only will Mr. Clarke benefit from receiving treatment, but the community will also benefit because someday, Mr. Clarke will be released back into the community and he will be expected to serve as a responsible and productive member of it.

In each of our lives there sometimes occur events that are tragic, and seemingly unforgivable. The loss of a

young life is, perhaps, the most difficult experience anyone can imagine. This is more so when that loss is caused by the behavior of the young, the inexperienced, and the reckless. Moral outrage causes us to cry out for a punishment that satisfies the moment, and which hopefully satisfies our anger at our loss. However, it is that same sense of morality and character that demands a dispositional determination that both befit the unconscionable behavior of this young man and the requirements of the law. The guiding tenet of our judicial process requires that we respond today in a manner that, while it may not seem fair or satisfactory to some, fulfills the mandate of justice. While the pain of a child's death makes us cry out for retribution, the right decision, the just decision, leads us down a path where appropriate sanctions can and will be meted out and accountability will be required.

Based on the evidence presented, this court finds that the Commonwealth has failed to meet its burden that this case should be transferred to criminal court. Accordingly, the Commonwealth's motion is denied. This case is to remain in Juvenile Division of the Court of Common Pleas of Butler County.

## ORDER

And now, May 5, 2003, upon consideration of the Commonwealth's motion to transfer to criminal court, it is hereby ordered, adjudged and decreed that said motion is denied. This case is to remain in Juvenile Division of the Court of Common Pleas of Butler County. A pre-adjudication conference is scheduled for May 16, 2003, in courtroom no. 1 of the Butler County Courthouse at 2 p.m.

It is further ordered that pursuant to title 42 section 6307(7) that this memorandum opinion and order are open to inspection by the public.