507 A.2d 74

COMMONWEALTH of Pennsylvania, Appellee,

v.

James G. MONARCH, Appellant.

Supreme Court of Pennsylvania.

Submitted Sept. 19, 1985.

Decided March 27, 1986.

Oliver J. Lobaugh, Seneca, for appellant.

William G. Martin, Dist. Atty., Franklin, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

The issue in this case, which concerns the warrantless, nighttime arrest of appellant in his home, is whether a post-verdict motions court has the power to review its own suppression ruling when no new evidence on this question has been introduced at trial which could not have been produced at the suppression hearing. This issue arises from the apparent conflict between our rules providing for finality of suppression rulings and Pa.R.Crim.P. 1123, requiring all assignments of error to be addressed in the first instance by the post-verdict motions court.

Hon. William E. Breene, of the Court of Common Pleas of Venango County, sitting at post-verdict motions, reversed his own pre-trial suppression ruling on the admissibility of evidence of intoxication. A three judge panel of Superior Court reversed, Tamilia, J. dissenting. *Commonwealth v. Monarch*, 330 Pa.Super. 165, 479 A.2d 491 (1984) (rearg. denied August 14, 1984).

On March 5, 1982, at approximately 8 p.m., Officer Thomas Hoover of the Sugarcreek Police Department responded to a hit and run complaint involving a parked vehicle. At the scene of the accident, one Mr. Keays informed Officer Hoover that the other vehicle involved in the accident belonged to appellant, and that Keays had observed appellant stumble after alighting from his vehicle. While Officer Hoover was inspecting the fresh damage to appellant's vehicle which was parked in appellant's driveway, Mrs. Monarch, appellant's wife, emerged from the Monarchs' home, and told Officer Hoover her husband had been involved in an accident. When Officer Hoover asked to speak with appellant, Mrs. Monarch indicated she had given appellant a sedative and he was asleep. Officer Hoover insisted upon speaking with appellant, whereupon Mrs. Monarch replied she would "see what she could do." As she walked toward the house, Officer Hoover followed. In spite of Mrs. Monarch's request that Officer Hoover remain outside, he followed Mrs. Monarch onto the porch and then inside her home. Once inside, Officer Hoover observed that appellant appeared to be intoxicated. Appellant was immediately arrested and charged with driving under the influence of alcohol, public drunkenness and unlawfully leaving the scene of an accident. Appellant's arrest occurred at approximately 8:30 p.m.

Appellant filed a motion to suppress, arguing, in the alternative, either that Officer Hoover lacked the requisite probable cause to effectuate the nighttime arrest of appellant in appellant's home,[1] or, assuming probable cause existed, that exigent circumstances justifying the warrantless

1. No one contends that probable cause to arrest for driving under the influence of alcohol existed prior to Officer Hoover's personal observation of appellant's intoxicated condition. Until Officer Hoover observed appellant, he only had information that appellant had been involved in a motor vehicle accident and that appellant stumbled as he alighted from his vehicle. This information is not sufficient to establish that appellant had operated his vehicle while under the influence of alcohol. Thus, prior to Officer Hoover's personal observation of evidence of appellant's intoxicated condition, he had no probable cause to arrest for driving while under the influence of alcohol.

arrest did not exist. In denying appellant's motion to suppress, the suppression court found as a fact that Officer Hoover's presence on the porch was permitted by Mrs. Monarch and that his observations of appellant's intoxicated appearance were made from the porch. The court then upheld the arrest on the grounds that the entry was based on probable cause, the entry was peaceable, and exigent circumstances, to-wit, the fleeting nature of evidence of intoxication, existed.

At the suppression hearing, Officer Hoover testified as follows:

Q.  ... Did you go up onto the porch then?

A.  Yes, I walked up on the front porch and Mrs. Monarch walked up on the porch first and opened the door at which time I observed Mr. Monarch standing in the hallway directly in front of the front door.

Q.  What room of the house was Mr. Monarch in at that time?

A.  It would be an entrance hall.  He was standing up against the wall.

.  .  .  .  .

Q.  What if anything [sic] observations did you make of Mr. Monarch at that time?

A.  *As soon as I entered the hallway there, Mr. Monarch struck me as being in an extremely intoxicated state.*

Q.  What observation did you make of him that led you to that conclusion?

A.  He was leaning against the wall because he was unable to stand ereck [sic].  His clothes were disarranged [sic] there was a strong odor of alcohol about his person.  His eyes were bloodshot and he had slurred speech.

Q.  What took place in that front entranceway?

A.  *As soon as I had entered and observed his intoxicated state,* I advised him of his Miranda Warnings and advised him that he was being placed under arrest for driving under the influence of alcohol.

(Emphasis supplied.) Officer Hoover testified similarly at trial, the only difference being that, at trial, Officer Hoover made no reference to any observations from the porch. Officer Hoover's trial testimony was that his observations of appellant were made *after* entering appellant's residence. At trial, Mrs. Monarch testified that Officer Hoover ignored her requests to wait outside the home, entered the home and then made the observations that led to appellant's arrest. Her testimony that Officer Hoover did not have permission to enter the home was accepted by the trial court as true.[2]

Testimony regarding appellant's intoxicated state was duly admitted at trial and he was convicted by a jury. On post-verdict motions, however, the court, on the basis of the variation in Officer Hoover's testimony, decided its earlier ruling on the motion to suppress was error. Specifically, the court wrote:

> In refusing the defendant's motion to suppress, we made a determination that Patrolman Hoover had probable cause to make the arrest. This determination was based upon two mutually dependant [sic] findings: (i) that Patrolman Hoover had learned from Charles Keays that the defendant had been involved in an automobile accident, and (ii) that Patrolman Hoover had observed the defendant in an intoxicated condition while standing on the defendant's porch with the permission of the defendant's wife. Both findings were necessary to establish the existence of probable cause.

**2.** Officer Hoover testified at the suppression hearing that Mrs. Monarch did give him permission to enter the home. Although the court found that Officer Hoover had permission to be on appellant's porch, the suppression court made no ruling as to Mrs. Monarch's credibility on the issue of consensual entry of the home. Such a ruling would have been unnecessary in light of the suppression court's resolution of the question of probable cause, which was that appellant's intoxicated state was observed from the porch.

The trial court, which was the same tribunal as the suppression court and which had the opportunity to observe both witnesses during both proceedings, resolved the credibility issue in favor of Mrs. Monarch.

... At trial, Hoover testified that he first observed the defendant *after* entering the defendant's home. It is clear to us that Hoover did not have permission or a right to be where he was when he made this crucial observation.

Appellee's motion in arrest of judgment was denied, but he was granted a new trial.

In reversing the lower court, Superior Court relied on this Court's statement in *Commonwealth v. DeMichel*, 442 Pa. 553, 277 A.2d 159 (1971) (opinion announcing the judgment of the Court by Roberts, J., joined by O'Brien, J.; Eagen, J. concurred in the result; dissenting opinion by Pomeroy, J., joined by then Chief Justice Jones). *DeMichel* rejected the notion that post-verdict motions courts were powerless to overturn suppression rulings issued pursuant to then Pa.R. Crim.P. 2001, which governed the method of pre-trial litigation of the legality of searches and seizures.[3] See also *Commonwealth v. Oakes*, 481 Pa. 343, 392 A.2d 1324 (1978) and *Commonwealth v. Harmon*, 469 Pa. 490, 366 A.2d 895 (1976). *DeMichel* states:

> Preliminarily we note our disagreement with the Superior Court's apparent categorical holding that a trial judge is powerless to overrule the decision of a suppression hearing judge. While "[w]e impliedly held in *Commonwealth v. Warfield*, 418 Pa. 301, 211 A.2d 452 (1965) that the trial judge cannot reverse *on the same record* at trial the decision made after the pretrial suppression hearing ...," *Commonwealth v. Washington*, 428 Pa. 131, 133 n. 2, 236 A.2d 772, 773 n. 2 (1968) (emphasis added), the same does not hold true when the trial judge's different ruling is based upon *new and different* evidence. When information comes to light *after* the suppression hearing clearly demonstrating that the evidence sought to be introduced by the Commonwealth is constitu-

**3.** "Rule 2001 was supersedead by a 1969 amendment to Pa.R.Crim.P. 323, which consolidated and made uniform the procedures relating to pretrial suppression of any evidence alleged to have obtained in violation of a defendant's constitutional rights." *Id.*, 442 Pa. at 560 n. 3, 277 A.2d at 162, n. 3.

tionally tainted, no consideration of justice or interest of sound judicial administration would be furthered by prohibiting the trial judge from ruling it inadmissible. Although a favorable ruling at the suppression hearing relieves the Commonwealth of the burden of proving a second time at trial that its evidence was constitutionally obtained, the trial judge must exclude evidence previously held admissible at the suppression hearing when the defendant proves by a preponderance of *new evidence* at trial that the evidence sought to be introduced by the Commonwealth was obtained by unconstitutional means.

*Id.,* 442 Pa. at 559–560, 277 A.2d at 162. (Except as noted, emphasis supplied.) (Footnote omitted.) Thus, where new evidence is produced at trial, *DeMichel* would allow the post-verdict motions court to review and, where appropriate, reverse the ruling of the suppression court.

■ Instantly, however, there was no new evidence produced at trial upon which the post-verdict motions court could base a reversal. The only new evidence presented at Monarch's trial was Mrs. Monarch's testimony that it would have been impossible for Officer Hoover to have observed Mr. Monarch from the porch. Although this evidence was new, as Mrs. Monarch also testified at the suppression hearing, presumably this evidence was not unavailable at the suppression proceeding and, thus, would not support reversal under Pa.R.Crim.P. 323(j).

Pa.R.Crim.P. 323(j) specifically states:

(j) If the [suppression] court determines that the evidence shall not be suppressed, such determination shall be final, conclusive and binding at trial, *except upon a showing of evidence which was theretofore unavailable,* but nothing herein shall prevent a defendant from opposing such evidence at trial upon any ground except its suppressibility.

(Emphasis supplied.) As under *DeMichel,* Rule 323 preserves the Commonwealth's relief from the burden of relitigating the admissibility of evidence at trial. Unlike *DeMichel* however, Rule 323 further provides that, to support

a reversal of the pretrial ruling during trial, the new evidence must have been unavailable at the time of the pre-trial suppression hearing. As Mrs. Monarch's testimony was not unavailable at the suppression hearing, her testimony at trial cannot support a reversal under Rule 323.

■ Rule 323 provides one exception to the general rule that judges may not overrule interlocutory orders of other judges of the same court in the same case. However, Rule 323 does not provide an exhaustive list of circumstances justifying reversal of suppression rulings on post-verdict motions. Where, as here, the evidence at suppression does not support the ruling, the post-verdict motions court is not powerless to correct errors in the suppression ruling.

■ The post-verdict motions court serves as the initial step in the appellate review of trial proceedings. See, *Commonwealth v. Oakes*, supra, 481 Pa. at 347, 392 A.2d at 1326. Our law requires that all assignments of error, whether pre-trial or at trial, must be raised in post-verdict motions. Pa.R.Crim.P. 1123. The failure of a defendant to raise assignments of error in post-verdict motions results in the preclusion of later review of those issues by an appellate court. See, *Commonwealth v. Agie*, 449 Pa. 187, 296 A.2d 741 (1972) (claim of prejudicial delay between arrest and arraignment not raised in post-verdict motions was not proper subject of appellate review.) One of the purposes for this rule is to afford trial courts the first opportunity to correct error or grant new trials where necessary and, thus, obviate the need for appellate review. *Cf., Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). We would not require defendants to raise issues for review by a court on post-verdict motions which that court is powerless to review.

■ To this end, Rule 1123(e) gives the judge presiding at post-verdict motions the power of a court *en banc*. That provision states:

(e) The trial judge shall determine whether post-verdict motions shall be argued before himself alone or before a

panel sitting as a court *en banc.* Whenever the trial judge hears the motions alone, he may make any rulings that could be made by a court *en banc.*

Rule 1123 does not limit the post-verdict motions judge's power to grant relief to cases where new evidence is produced. Thus, a post-verdict motions court, as a reviewing court, is competent to review the sufficiency of the evidence produced at a suppression hearing.

■■■ In reviewing the ruling of a suppression court, the reviewing court's initial task is to determine whether the factual findings are supported by the record. In making this determination, if the suppression court held for the prosecution, the reviewing court must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Johnson,* 467 Pa. 146, 354 A.2d 886 (1976). Review of Officer Hoover's testimony at the suppression hearing demonstrates that he clearly testified that his observations of clues to appellant's intoxicated state were made after he entered appellant's home, and not before. Indeed, Superior Court recognized this fact when they wrote: "Our reading of Patrolman Hoover's testimony at both the suppression and trial (RR. 15A & 72A–73A), consistently adheres to the revelation ... that only *after* entering the house did he observe Mr. Monarch to be in an intoxicated condition." 330 Pa.Super. at 177, 479 A.2d at 496. See also, *Id.,* 330 Pa.Superior Ct. at 169, 479 A.2d at 493. As Officer Hoover possessed no evidence of intoxication prior to entering appellant's home, the suppression court's conclusion that probable cause was established while the officer was on the porch and prior to the officer's warrantless entry of appellant's home is unsupported by the record.

■■■ It appears from the trial court's opinion that the court reversed its earlier suppression order because Officer Hoover failed to testify at trial that he had observed appellant's intoxicated state from the porch. The requirement of

*DeMichel,* supra, and Rule 323(j), that the admissibility of evidence cannot be relitigated at trial, prohibits a trial court's reversal of the suppression court simply because the Commonwealth failed to *re-prove* at trial probable cause for the arrest. However, where the suppression ruling is not supported by the record of the suppression proceeding, it is perfectly appropriate for the court, on post-verdict motions, to reverse its earlier suppression ruling. Indeed, in view of the requirement of Rule 1123 that suppression issues be preserved in post-verdict motions, it would be ludicrous to require the filing of such motions, but prohibit the court's meaningful review.

We hold, therefore, that the order of the trial court granting a new trial on the basis that the evidence of appellant's intoxication was obtained during the warrant-less, nighttime arrest, without probable cause, in appellant's home was correct.[4] Order of Superior Court reversed, and the order of the Court of Common Pleas granting a new trial is reinstated. The matter is remanded to the Court of Common Pleas for trial.

Reversed and remanded.

HUTCHINSON, J., filed a concurring opinion.

McDERMOTT, J., notes a dissent.

HUTCHINSON, Judge, concurring.

I concur. However, I wish to disassociate myself from the implication that *Commonwealth v. DeMichel,* 442 Pa. 553, 277 A.2d 159 (1971), a plurality opinion, cited by the majority at 76, 77 and discussed thereafter, controls the issues in this case or has precedential effect.

4. In view of our disposition of this case, we need not address the additional question raised by appellant, to-wit, whether under any circumstances, evidence of intoxication in the abstract would constitute "exigent circumstances" sufficient to justify a warrantless, nighttime arrest in a person's home.