**470**

COMMONWEALTH of Pennsylvania,
Appellee,

v.

Fakardeen LEE, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 3, 1997.

Filed Oct. 15, 1997.

John W. Packel, Asst. Public Defender, Philadelphia, for appellant.

Peter J. Gardner, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before DEL SOLE, SCHILLER, and MONTEMURO *, JJ.

SCHILLER, Judge.

Appellant, Fakardeen Lee, appeals from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County on December 11, 1995. We affirm.

FACTS:

On June 23, 1994, appellant shot a 21 year old male in the chest at close range. Fortunately, the victim survived. The incident occurred when appellant came out of a store and encountered the victim talking with friends. Appellant and the victim argued

* Retired Justice sitting by designation.

briefly and appellant left. He returned shortly thereafter, stood nearby for a moment, then struck the victim in the head and shot him in the left side of the chest. Based on the victim's identification, a warrant was issued for appellant's arrest. On June 29, 1994, appellant, then 16[1], surrendered to Philadelphia police.

A petition of delinquency was filed charging appellant with aggravated assault[2], possession of an instrument of crime[3], recklessly endangering another person's life[4], carrying a firearm without a license[5], carrying a firearm on a public street[6] and simple assault[7]. The Commonwealth filed notice that it would seek to have appellant's case transferred to the adult division pursuant to 42 Pa.C.S. § 6355. On July 25, 1994, a certification hearing was held, and a *prima facie* case was established based on the complainant's testimony. In the amenability phase of the hearing, the court reviewed the contents of appellant's J-file[8], which included his prior record[9], information on his family, and a psychological evaluation[10]. The court also heard testimony from the probation officer's supervisor; this officer, who had only spoken with appellant before the hearing, recommended that he remain within the juvenile system because he had never received services from the system.

The psychologist made no recommendation on certification. Argument was also presented by the Commonwealth and defense counsel[11]. The court certified appellant's case for transfer to the adult division.

On October 4, 1994, appellant's case was reassigned to the Philadelphia Court of Common Pleas, Criminal Division, and, after numerous delays, he was tried without a jury on June 13 and 15, 1995. Appellant was found guilty of aggravated assault, recklessly endangering another person and possession of an instrument of crime. A post-trial motion for extraordinary relief[12] was filed which challenged the transfer of appellant's case to the adult division.

On December 6, 1995, at a post-trial motion and sentencing hearing, the court heard further evidence on appellant's motion regarding his amenability to treatment as a juvenile, and reviewed a pre-sentencing report including mental health and drug and alcohol evaluations. Ultimately, the court refused to grant relief on this motion, concluding that it lacked the power to review the Juvenile Court's decision. Appellant was then sentenced to not less than 5 nor more than 10 years for the aggravated assault charge[13] and not less than 2½ nor more than 5 years (concurrent) on the PIC conviction.

---

1. Appellant was born March 19, 1978.

2. 18 Pa.C.S. § 2702(a)(1).

3. 18 Pa.C.S. § 907.

4. 18 Pa.C.S. § 2705.

5. 18 Pa.C.S. § 6106.

6. 18 Pa.C.S. § 6108.

7. 18 Pa.C.S. § 2701.

8. The "J-file" or juvenile file includes psychiatric reports, arrest records, probation reports and other records regarding the juvenile. *See Commonwealth v. Rush*, 522 Pa. 379, 385 n. 2, 562 A.2d 285, 288 n. 2 (1989).

9. On April 12, 1994, appellant had been adjudicated delinquent in Delaware County for conspiring to steal a car (unauthorized use of a motor vehicle). He had participated with 2 adults in stealing the car which was followed by a high speed chase and pursuit on foot by police. At the time of this hearing, a bench warrant was outstanding because of appellant's failure to appear at a required court appearance in Philadelphia where the case had been transferred for disposition.

10. This evaluation indicated that appellant came from a stable family and was of above average intelligence, although it also indicated that he had been a daily user of marijuana, had problems controlling his temper and had been chronically truant.

11. At the certification hearing appellant was represented by private counsel. At trial and the post-trial sentencing hearing, he was represented by the Defender Association of Philadelphia.

12. Pa.R.Crim.P. 1405 B. Oral Motion for Extraordinary Relief.

13. For purposes of sentencing, the reckless endangerment conviction merged with aggravated assault. However, under 42 Pa.C.S. § 9712—Sentences for offenses committed with firearms—the aggravated assault conviction carried a mandatory 5 year sentence.

The court also ordered that appellant be evaluated and considered for placement at a juvenile facility. This appeal followed.

DISCUSSION:

On appeal, appellant raises two issues:

Whether the juvenile court erred in transferring appellant's case to the adult division?

Whether the trial court erred in declining to review the juvenile court decision after additional evidence of appellant's amenability was presented at a post-trial hearing?

■■■ Before an appellate court will set aside a decision to transfer, the appellant must show a gross abuse of the broad discretion afforded the hearing judge. *Commonwealth v. McGinnis*, 450 Pa.Super. 310, 315, 675 A.2d 1282, 1285 (1996) (citation omitted). An abuse of discretion "is not merely an error of judgment, but the misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment based upon partiality, prejudice or ill will." *Id.* at 316, 675 A.2d at 1285.

In his first issue appellant contends that in certifying his case to the criminal division, the juvenile court made two errors which entitle him to a new hearing. He alleges that the court failed to state fully the reasons for transferring the case to the adult division, and that in making that decision, the court impermissibly relied on the nature of the crime. We address these contentions in order.

Under our law, when a delinquency petition has been filed alleging criminal conduct, the case may be transferred to criminal court for prosecution "if all of the following exist:"

(1) The child was 14 or more years of age at the time of the alleged conduct.

(2) A hearing on whether the transfer should be made is held in conformity with this chapter.

(3) Notice in writing of the time, place, and purpose of the hearing is given to the child and his parents, guardian, or other custodian at least three days before the hearing.

(4) The court finds:

(i) that there is a prima facie case that the child committed the delinquent act alleged;

(ii) that the delinquent act would be considered a felony if committed by an adult; and

(iii) that there are reasonable grounds to believe all of the following:

(A) That the child is not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities, even though there may not have been a prior adjudication of delinquency. In determining this the court shall consider the following factors:

Age.

Mental capacity.

Maturity.

The degree of criminal sophistication exhibited by the child.

Previous records, if any.

The nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the Juvenile Court to rehabilitate the child.

Whether the child can be rehabilitated prior to the expiration of the Juvenile Court jurisdiction.

Probation or institutional reports, if any.

The nature and circumstances of the acts for which the transfer is sought.

Any other relevant factors.

(B) That the child is not committable to an institution for the mentally retarded or mentally ill.

(C) That the interests of the community require that the child be placed under legal restraint or discipline or that the offense is one which would carry a sentence of more than three years if committed by an adult.

42 Pa.C.S. § 6355(a).

■■■ To comply with this section of the Juvenile Act, a certification court "need not make a formal statement or conventional findings of fact, but the statement must be sufficient to demonstrate that the question of certification has received the careful consideration of the juvenile court." *Commonwealth v. McGinnis*, 450 Pa.Super. at 316, 675 A.2d at 1285, quoting *Commonwealth v.*

*Sanders,* 339 Pa.Super. 373, 383, 489 A.2d 207, 212 (1985). Such a statement must set forth the basis for the certification order "with sufficient specificity to permit meaningful appellate review." *Id.* (citations omitted). However, an appellate court may not require detailed or intricate explanations of the rationale for certification when a detailed juvenile file and arguments of counsel have been presented for consideration. *Commonwealth v. McDonald,* 399 Pa.Super. 250, 582 A.2d 328, 333–334 (1990) *alloc. denied* 527 Pa. 664, 593 A.2d 839 (1991). Appellant claims that in his case the juvenile court certified him without making findings of fact, declining to indicate how it balanced the relevant factors. He characterizes the judge's statement as "boiler plate"; a "bland declaration that is inadequate." The record before us belies these contentions. During the initial phase of the certification hearing, the court heard the victim's testimony that appellant walked up to where he was talking with friends, stood by briefly and then hit him on the head with a gun and shot him in the chest.[14] During the amenability phase of the hearing, appellant's J-file was entered in evidence and the district attorney and appellant's counsel both presented argument. The Commonwealth noted that appellant was 16, and emphasized his prior record[15] as well as the seriousness of the crime, in terms of both its arbitrary nature and the severity of the resulting injuries; defense counsel argued for amenability based on reports that indicated appellant's above average I.Q. and stable family background, and the fact that appellant had not had an opportunity to benefit from the services of the juvenile system. The probation officer also recommended against certification because appellant had never been part of the juvenile system.

At the conclusion of this process, the judge made the following statement on the record:

The court has heard and has considered his age and the alleged degree of sophistication in the charges before the court which are very serious, including the facts that are in the record at the preliminary hearing.

I have considered the psychologicals which note that he is not committable to an institution for the mentally ill mentally retarded (sic). Based upon a full reading, also I have to note by stipulation he is not committable.

I know he has a fairly high I.Q. I heard from the probation officer and have the probation officer's recommendation in the record, and I have reviewed the charges from the Tinicum Township Police Department of Delaware County, I believe, regarding his prior arrest, and there is no final disposition made on that case.

I have considered my duties regarding legal restraint and the safety of the community, which is one factor involved in this proceeding, and I am well aware that juvenile court is established to handle matters involving juveniles and we have jurisdiction until the age of 21 should he be found to be amenable in this system.

Based on everything that is before the court, I believe that the defendant should be certified and will certified (sic) him to the adult division.

N.T., July 25, 1994, pp. 19–20.

Although a juvenile court may "be deemed to have properly considered and to have properly weighed the relevant information supplied for its consideration," *id.* at 262, 582 A.2d at 333, the judge's statement specifically attests to the court's "full reading" of the psychological report and consideration of appellant's prior record, the probation officer's recommendation and the serious nature

14. Additional evidence established that just prior to the shooting, there had been an exchange of words, that appellant left and then returned and shot the victim. The victim was seriously injured and spent ten days in the hospital where doctors were unable to remove the bullet which lodged in an inaccessible place behind his lungs. Subsequently, further surgery was necessary because water accumulated in his lungs.

15. Appellant makes much of the fact that both the Commonwealth and his defense attorney erroneously indicated at the hearing that he was on probation at the time of his arrest. However, that error was corrected by the probation officer who pointed out that he had never been placed on probation because a bench warrant was issued when appellant failed to show up for a transfer of disposition hearing. N.T., July 25, 1994, p. 15.

of the crime. Furthermore, the final paragraph attests to the judge's balancing of concerns related to public safety versus those that recognize that juveniles may be given an alternative approach to rehabilitation. After weighing everything before him the juvenile judge clearly felt that certification was the appropriate and well-considered choice. Combined with the material on the record, there was no need for greater specificity or a detailed explanation of the rationale for certification. We find no deficiency in the court's statement, and, therefore, find no abuse of discretion.

Appellant's next allegation of error is that the juvenile court focused solely on the nature of the crime in certifying his case to the adult division. He argues that the focus of the hearing was on the crime to the exclusion of his rehabilitative potential, available treatment options in the juvenile system and whether his needs could be accommodated in that system. He refers us to *Commonwealth v. Greiner*, 479 Pa. 364, 388 A.2d 698 (1978) where the Supreme Court vacated a transfer order finding it improper to transfer based only on the nature of the crime. However, *Greiner* is clearly distinguishable from the present case.

■ In *Greiner*, a 15 year old became involved with his older brother and an adult in a kidnapping scheme which ended with the stabbing of someone other than the kidnap target. The record reflected that the juvenile had no previous record, enjoyed a stable family life, was an above average student and was not a discipline problem in either setting. It was also unclear whether the juvenile had actually stabbed the victim. The probation officer who had interviewed the juvenile also stated that he would be better rehabilitated in the juvenile system. In essence, the only negative factor in front of the court was the actual crime. Here, according to appellant's own argument, we have a 16 year old who in the first half of 1994 had conspired with others to steal a car and then attempted to

elude the police; who failed to respond to the court's order with regard to that delinquency; and who, two months, later shot and severely wounded the victim without provocation. Furthermore, evidence revealed that appellant used marijuana daily, and was chronically truant from school. Additionally, the juvenile judge explicitly indicated that the nature of the crime was only one of the factors it considered:

> MR. KRINICK: (defense counsel) ... I believe the probation department's report is that he is amenable to treatment in the juvenile system.
>
> A shooting aside doesn't change that. I think the case law is quite clear that the nature of the offense cannot be the deciding (sic) factor. That in and of itself cannot be a reason for certification.
>
> THE COURT: That's one of the factors.
>
> MR. KRINICK: It is certainly one of the listed factors in the statute. The case law is quite clear that it cannot be the only.
>
> . . .
>
> This young man has potential to do something with his life ....

N.T., July 25, 1994, p. 14. This record gives us no basis to conclude that the hearing judge abused his discretion in concluding that the weight of the evidence warranted a decision to certify this matter for criminal court.

■ Appellant's second issue raises a question of law and as such our review is plenary. *In the Interest of McCord*, 445 Pa.Super. 137, 144 n. 4, 664 A.2d 1046, 1049 n. 4 (1995). He argues that the trial court erred in refusing to review the juvenile court's certification decision after additional evidence on amenability was introduced at a post-trial hearing. Appellant claims that notwithstanding the coordinate jurisdiction rule which ordinarily precludes one court from ruling on the decision of another of equal status [16], a court acting post-trial has

---

**16.** [Pennsylvania] has long recognized that judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions.... This rule, known as the "coordinate jurisdiction rule," ... falls squarely within the ambit of a generalized expression of the "law of the case" doctrine. This doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the mat-

broad powers of review. Specifically, he asserts that permitting a common pleas judge to conduct post-trial review of pre-trial rulings based upon new evidence is consistent with both Pa.R.Crim.P. 1405 B [17] and with precedent. *Commonwealth v. DeMichel*, 442 Pa. 553, 277 A.2d 159 (1971); *Commonwealth v. Monarch*, 510 Pa. 138, 507 A.2d 74 (1986). The Commonwealth counters that not only does the law not permit the criminal division of the court of common pleas to overrule the juvenile division of the same court, even if it did, appellant did not present any *new* evidence, nor does his claim implicate an "egregious error" as required under Pa.R.Crim.P. 1405 B.

■ This court in a case involving a request for decertification made prior to trial held that "the issue of certification was not reviewable by the criminal court whether it alleged there was a failure to comply with due process in the juvenile proceeding or that there was new evidence." *Commonwealth v. Madden*, 342 Pa.Super. 120, 125, 492 A.2d 420, 423 (1985). Appellant, however, relies on the Supreme Court's decision in *Commonwealth v. DeMichel*, 442 Pa. 553, 277 A.2d 159 (1971). There a trial judge presented with new and different evidence *during the trial* overruled, on post-trial motion, a suppression court ruling.

Significantly, the court in *DeMichel* was not faced with a request to reopen the evidentiary hearing upon which the suppression order was entered; rather, it was presented with the additional information in the due course of the trial. Here, by contrast, the appellant during pre-sentence motions was attempting to relitigate the certification issue by proffering additional evidence.

■ In *Commonwealth v. Monarch*, 510 Pa. 138, 507 A.2d 74 (1986), the Supreme Court held that, under then extant rules [18], the post trial motions court served as the initial step in the appellate review process. Sitting in that capacity, the court was empowered to review all issues fairly raised. *See also Commonwealth v. Elslager*, 349 Pa.Super. 217, 221, 502 A.2d 1354, 1356–1357 (1986). However, the present rules relating to post verdict criminal practice have been amended to require such motions to be filed *post-sentence. See* Pa. Rule of Criminal Procedure 1410. Here the appellant's motion was filed *prior* to sentence, pursuant to Rule 1405 B(1). That Rule only provides for the sentencing judge to entertain, pre-sentence, "an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial." The Rule does not provide for the conduct of a separate evidentiary hearing to relitigate an issue which has been ruled upon pre-trial.

---

ter.... Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.
*Commonwealth v. Starr*, 541 Pa. 564, 573, 664 A.2d 1326, 1331 (1995).

17. RULE 1405. PROCEDURE AT TIME OF SENTENCING
**B. Oral Motion for Extraordinary Relief**
(1) Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial.
**Comment**
Oral Motion for Extraordinary Relief

Under Section B, when there has been an error in the proceedings that would clearly result in the judge's granting relief post-sentence, the judge should grant a motion for extraordinary relief before sentencing occurs. Although trial errors may be serious and the issues addressing those errors meritorious, this rule is intended to allow the trial judge the opportunity to address only those errors so manifest that immediate relief is essential.... for example, when there has been a change in case law, or, in a multiple count case, when the judge would probably grant a motion in arrest of judgment on some of the counts post-sentence. Although these examples are not all-inclusive, they illustrate the basic purpose of the rule: when there has been an egregious error in the proceedings, the interests of justice are best served by deciding the issue before sentence is imposed....
Pa. Rule of Crim.P. 1405.

18. Former Rule 1123 was rescinded in 1993 when post-trial procedures were revised, consolidated and placed after sentencing. See Rule 1410 (post-Sentence Procedures; Appeal).

Therefore, although a post-sentencing judge may have the power to entertain a challenge to the legal conclusion arrived at by the certification judge based *on the record before that judge,* the pre-sentencing judge does not have the power to relitigate the same question resolved by the coordinate juvenile division by opening the record to hear additional evidence. Thus, in this case, if the judge of the criminal division, had been presented with appropriate *post-sentence* motions he would have been able, pursuant to the authority of *Commonwealth v. Monarch, supra,* and *Commonwealth v. Elslager, supra,* to rule on the question of whether the certification was correct as a matter of law [19]; however, under the principles of coordinate jurisdiction, and in light of *Commonwealth v. Madden, supra,* he was without authority to consider additional evidence offered in the pre-sentence motion.[20]

CONCLUSION:

There was no abuse of the juvenile court's discretion in either the procedure or the substance of the juvenile court's certification hearing. The court complied with the Juvenile Act in providing this court with a sufficient statement of reasons for the transfer, and, as both the statement and the record reflect, clearly considered a range of factors, in addition to the nature of the crime, to determine that appellant was certifiable to the criminal division. Furthermore, the trial court rightly concluded that there was no authority for it to relitigate the juvenile court's transfer ruling.

Consequently, the Judgment of Sentence of the Court of Common Pleas of Philadelphia County is affirmed.

DEL SOLE, J., files a concurring opinion.

DEL SOLE, Judge, concurring:

I agree with the ultimate determination in this case. However, I write separately to express my disagreement with the majority's restrictive interpretation of Pennsylvania Rule of Criminal Procedure 1405 B. This rule, under B.(2), permits a trial judge, pre-sentence, to rule on motions for extraordinary relief which would otherwise wait until post-sentence.

The comment to the rule, while not binding, clearly evidences the intent of the new Rules of Criminal Procedure, embodied in Rule 1405 and Rule 1410 (Post–Sentence Procedures; Appeal), which is to expedite the disposal of matters before the criminal court. What the majority suggests is that a trial judge who has post-sentence authority to rule on this issue has no post-verdict pre-sentence authority. This is form over substance and merely serves to delay the criminal justice process.

While I do not agree with the majority's reasoning regarding the trial court's ability to review this issue, I do agree with the determination that certification is supported.

---

**19.** The fact that the judge in this case did not actually review the certification decision post-sentence is rendered moot by the fact that we have now reviewed the issue and found the certification to have been supported by the record.

**20.** An unanswered question here is whether a juvenile would ever be entitled to a new certification hearing based on an allegation of "after discovered evidence." Even if such a right existed, on this record the proffered evidence could not have satisfied the standards governing the grant of relief based on after discovered evidence: i.e., that the evidence

(1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeaching credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. Stocker,* 424 Pa.Super. 189, 622 A.2d 333, 346, (1993) citing *Commonwealth v. Buehl,* 510 Pa. 363, 393, 508 A.2d 1167, 1182 (1986) (citation omitted).