J-S23014-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAUL CASTRO | : | |
| | : | |
| Appellant | : | No. 672 EDA 2021 |

Appeal from the Judgment of Sentence Entered January 20, 2021
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0001429-2019

BEFORE: LAZARUS, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.: Filed: August 12, 2021

Raul Castro appeals from the judgment of sentence, entered in the Court of Common Pleas of Chester County, after he entered an open guilty plea to criminal attempt—first-degree murder,[1] possession of a firearm by a minor,[2] and recklessly endangering another person.[3] On appeal, Castro challenges the trial court's denial of his motion to decertify the matter to Juvenile Court. Upon our review, we affirm.

At Castro's guilty plea hearing, counsel for the Commonwealth summarized the facts and circumstances giving rise to this matter as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901(a), 2502(a).

[2] 18 Pa.C.S.A. § 6110.1(a).

[3] 18 Pa.C.S.A. § 2705.

On the 1st of April, 2019, in East Brandywine Township, Chester County, Pennsylvania, the defendant, Raul Castro, [then aged 15,] arranged to meet two peers, A.M. and C.D., [both also 15,] by an old railroad bridge for a fight with A.M. When they met, they were walking along the river. Castro was walking behind A.M. and C.D. He then pulled out a SIG Sauer [9-millimeter handgun] that he had taken from his grandfather and shot A.M. in the abdomen and shoulder. [A] third shot was fired, which [whizzed past] C.D.[,] who then hid in an embankment for approximately 20 seconds[.] As A.M. was lying on the ground, [Castro] was over him and A.M. was able to wrestle the firearm from [Castro's] possession. As a result of being shot, A.M. suffered serious bodily injury. He had extensive damage to his intestines and a significant portion had to be removed. He had several surgeries at the time, then had a bowel obstruction approximately seven months later which caused him to have another surgery. [A]s a result of this[,] he will always be at a higher risk for bowel obstructions in the future.

N.T. Guilty Plea Hearing, 10/28/20, at 4-5.[4] On the day prior to the incident, Castro had performed internet research regarding what type of ammunition to use with, as well as how to load, a 9-millimeter handgun. *See* N.T. Decertification Hearing, 6/28/20, at 42.

In addition to the offenses to which he ultimately pled guilty, Castro was also charged with aggravated assault, possession of instruments of crime, two counts of terroristic threats, and three counts of simple assault. On September 5, 2019, Castro filed a motion to decertify, requesting that his case be transferred to juvenile court. Following a bifurcated hearing,[5] the court denied decertification and Castro entered the above-described guilty plea on

---

[4] Castro confirmed the veracity of the Commonwealth's recitation.

[5] We note that only the transcript from the first hearing is contained within the certified record.

October 28, 2020. On January 20, 2020, the court sentenced Castro to a term of 10 to 20 years' imprisonment for attempted murder, plus an aggregate term of 7 years' probation on the remaining two offenses. Castro filed a post-sentence motion for reconsideration of his sentence, which the court denied on February 5, 2021. Castro filed a timely notice of appeal, and both he and the trial court have complied with Pa.R.A.P. 1925. On appeal, Castro asserts that the trial court erred in denying his motion to decertify.

We begin by noting our standard of review:

> Decisions of whether to grant decertification will not be overturned absent a gross abuse of discretion. An abuse of discretion is not merely an error of judgment but involves the misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment passed upon partiality, prejudice[,] or ill will.

**Commonwealth v. Smith**, 950 A.2d 327, 328 (Pa. Super. 2008).

Here, Castro claims that the trial court abused its discretion by refusing to decertify his case, despite the court acknowledging that Castro is amenable to treatment and rehabilitation—an opinion expressed not only by Castro's expert, but also by that of the Commonwealth. Castro asserts that, while "[t]he trial court denied [his] motion [to decertify] largely out of concern that the juvenile system would not have enough time to treat [him] before he turned 21," that conclusion is not supported by the record. Brief of Appellant, at 9. Rather, the experts in this case—both experienced in Pennsylvania juvenile law and aware that juvenile jurisdiction ends at age 21—"both opined that [Castro] could be treated and rehabilitated[.]" **Id.** Castro argues that "[t]he Supreme Court has made it clear that the law does not permit a juvenile

- 3 -

to be prosecuted as an adult based on the nature of the offense 'without a concomitant finding that the youth was not amenable to treatment.'" **Id.**, quoting **Commonwealth v. Greiner**, 388 A.2d 698 (Pa. 1978). Because there is no dispute that he is amenable to treatment, Castro asserts that the court erred by declining to decertify the matter to the juvenile justice system. He is entitled to no relief.

The Juvenile Act ("Act"), 42 Pa.C.S.A. §§ 6301-6375, is designed to effectuate the protection of the public while providing children who commit delinquent acts with supervision, rehabilitation, and care while promoting responsibility and the ability to become a productive member of the community. **See** 42 Pa.C.S.A. § 6301(b)(2). The Act defines a "child" as one who is under eighteen years of age. **See** 42 Pa.C.S.A. § 6302. A delinquent act is, *inter alia*, "an act designated as a crime under the law of this Commonwealth." **Id.** However, because the Legislature has deemed some crimes so heinous, certain crimes are specifically excluded from the definition of "delinquent acts" when committed by an offender who is at least fifteen years old who possesses a deadly weapon. **See id.** (excluding, *inter alia*, aggravated assault and attempted murder from definition of "delinquent acts" when committed with deadly weapon by offender age 15 or older). Here, Castro was 15 years old and in possession of a gun when he was charged with, *inter alia*, aggravated assault and attempted murder. Accordingly, his crimes were not considered delinquent acts and charges were filed directly with the criminal court, where original exclusive jurisdiction vests and is presumptively

proper. ***Commonwealth v. Ramos***, 920 A.2d 1253, 1257–58 (Pa. Super. 2007).

When charged as an adult, a juvenile may request that his case be transferred to juvenile court in a process called "decertification." Pursuant to section 6322 of the Act,

> If it appears to the court[,] in a criminal proceeding charging murder or any of the offenses excluded by paragraph (2)(ii) or (iii) of the definition of "delinquent act" in section 6302, that the defendant is a child, the case may . . . be transferred [to juvenile court] and the provisions of this chapter applied. In determining whether to transfer a case charging murder or any of the offenses excluded from the definition of "delinquent act" in section 6302, the child shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest. In determining whether the child has so established that the transfer will serve the public interest, the court shall consider the factors contained in section 6355(a)(4)(iii) (relating to transfer to criminal proceedings).

42 Pa.C.S.A. § 6322(a).

In determining whether decertification is appropriate, section 6322(a) requires that the court consider the following factors:

> (A) the impact of the offense on the victim or victims;
>
> (B) the impact of the offense on the community;
>
> (C) the threat to the safety of the public or any individual posed by the child;
>
> (D) the nature and circumstances of the offense allegedly committed by the child;
>
> (E) the degree of the child's culpability;
>
> (F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

- 5 -

(G) whether the child is amenable to treatment, supervision[,] or rehabilitation as a juvenile by considering the following factors:

(I) age;

(II) mental capacity;

(III) maturity;

(IV) the degree of criminal sophistication exhibited by the child;

(V) previous records, if any;

(VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

(VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

(VIII) probation or institutional reports, if any; [and]

(IX) any other relevant factors[.]

42 Pa.C.S.A. § 6355(a)(4)(iii).

While the Act requires that a decertification court consider all of the amenability factors, it is silent as to the weight assessed to each by the court. ***Commonwealth v. Sanders***, 814 A.2d 1248, 1251 (Pa. Super. 2003). The ultimate decision of whether to certify a minor to stand trial as an adult is within the sole discretion of a decertification court. ***Commonwealth v. Jackson***, 722 A.2d 1030, 1034 (Pa. 1999). A decertification court need not address, *seriatim*, the applicability and importance of each factor and fact in reaching its final determination. ***Id.***

> The presumption in this Commonwealth [is] that[,] if a court has facts in its possession, it will apply them. ***See Commonwealth v. Devers***, [] 546 A.2d 12, 18 ([Pa.] 1988) (presuming that trial court considered pre-sentencing report); ***Commonwealth v. Lee***, 703 A.2d 470, 474 (Pa. Super. 1997); ***Commonwealth v.***

> *McGinnis*, [] 317, 675 A.2d 1282, 1286 ([Pa. Super.] 1996); *Commonwealth v. McDonald*, [] 582 A.2d 328, 331 ([Pa. Super.] 1990). When evaluating the propriety of a certification decision, absent evidence to the contrary, a reviewing court must presume that the juvenile court carefully considered the entire record.

*Id.* at 1034-35.

Here, the decertification court addressed the factors enumerated in section 6355(a)(4)(iii) as follows:

> [T]he first [factor] listed is the impact of the offense on the victims. On this factor, the court heard testimony from both victims. Each testified as to how their lives have changed since this violent attack. The victim who was struck by the bullets[, A.M.,] testified that he's undergone multiple surgeries and is at constant risk of another bowel obstruction and an extremely painful condition. He testified to his significant weight loss because he cannot eat as much as previously. The other juvenile victim[, C.D.,] now reacts to loud noises and is seeking some counseling and mental health related treatment.
>
> The court heard testimony from the mothers of both victims[, who] each testified that it would make it nearly impossible for them to feel safe in their own communities. They were especially fearful for the safety of their children. They believe that if the defendant committed this act once, he could do so again. This testimony was heartfelt, and it was impactful. The courts can only sympathize, not understand or know, the fear of a mother being unable to locate her son, only to learn that he had been shot and was in critical condition in the hospital. [T]his cannot be minimized in any way, shape, or form. Unfortunately, the parents and family of the victims [must] understand there are certain practical realities in these cases, and that[,] due to the defendant's young age, he will be released at some point in the future, whether he's tried as an adult or a juvenile. [T]he trauma and fear that these families will feel, unfortunately, will be realized at some[ ]time, whatever time that is. We only hope that time may assuage some of these feelings and that the appropriate treatment will then enable the defendant to avoid the risk of recidivism.

The court heard testimony regarding the impact on the community. The Commonwealth presented the testimony of the principal of Pottsgrove High School, where the defendant and both victims attended. He testified that the school had to provide counseling for students, faculty, [and] parents following the incident to try and help individuals deal with the trauma inflicted by this crime.

As for the third, fourth, and fifth factors which are enumerated in the statute, it is clear to this court that the violent nature of the offense was disproportionate to the circumstances. The defendant brought a gun to a proposed fist fight. He shot at two individuals as their backs were turned and they were running away. There is no doubt about his culpability. Without rehabilitative treatment, the defendant poses a threat to the public.

The adequacy and duration of dispositional alternatives that are available to the defendant is an important factor and listed in the statute. In some ways[,] this factor goes hand in hand with the final factor, which regards the [defendant's] amenability to treatment. The defendant offered evidence in support of this factor through the testimony of Dr. [Frank] Dattilio, . . . and the parties stipulated to the report of Dr. [Bruce] Mapes. Both reports, when read, clearly state that the defendant is amenable to treatment; however, the reports emphasize that the treatment should be[ "long-term."] They each opine that[,] without a lengthy period of treatment and supervision[,] the defendant runs the risk of recidivism. If the juvenile court retains jurisdiction, the defendant will be released at the age of 21 regardless of the successfulness of the treatment. The court is not permitted to require supervision as part of that juvenile sentence following his release, and this raises significant concerns regarding the adequacy and duration of the dispositional alternatives that are available to the defendant. To ensure that the defendant is provided with the opportunity for long-term rehabilitative treatment as recommended by the experts in this case and that the defendant is monitored post release, this court concludes that he must remain in the adult system.

Both experts agree that the Youthful Offenders Treatment in the adult system is similar to that of the juvenile system. However, the Youthful Offenders Treatment offered in the adult system may span a lengthier period of time to provide offenders with the highest chance of successful treatment as well as supervision following release. Only the adult system can compel and provide

> long-term treatment, which satisfies both the experts and the court's concerns as to adequacy and duration.
>
> As a result, we conclude that the defendant has not met [his] burden by a preponderance of the evidence, and the motion to decertify will be denied.

N.T. Decertification Hearing, 7/15/20, at 5-9 (unnecessary capitalization omitted).

Relying on *Greiner*, *supra*, Castro argues that the court's decision not to decertify was in error, as the court "cannot refuse decertification when it is undisputed that the defendant is amenable to treatment and capable of rehabilitation in the juvenile system." Brief of Appellant, at 9-10. Castro's reliance on *Greiner* is misplaced. In that case, a petition for delinquency was filed against 15-year-old Greiner after he participated in a kidnapping scheme gone awry. The Commonwealth moved to transfer the case to the criminal division to prosecute him on charges of criminal conspiracy, attempted murder, attempted kidnapping, burglary, and aggravated assault. The trial court granted the Commonwealth's motion and Greiner appealed. After reviewing the record, the Court addressed the propriety of the trial court's determination under the facts of the case and the criteria set forth in the then-applicable version of the Act[6] as follows:

---

[6] Former section 28(a) of the Act provided that a delinquency action could be transferred to criminal court for prosecution if the offender was 14 years of age or older and:

*(Footnote Continued Next Page)*

We believe that the evidence presented was, as a matter of law, insufficient to establish that appellant was not amenable to treatment, supervision or rehabilitation as envisioned under the Act. The only evidence bearing upon this question was the testimony of a county probation officer who had interviewed appellant. This officer stated a number of times that appellant could be better rehabilitated through the juvenile process than the adult criminal process. In addition, the record positively reflects that appellant enjoyed a stable home life, was an above[-]average student, and was not a discipline problem at home or at school. **From a careful review of the transcript of the transfer hearing it is apparent that the only motivating factor for the decision to transfer was the nature of the crime**. The Act, however, except for the crime of murder, does not permit the nature of the conduct to justify the transfer from the juvenile system without a concomitant finding that the youth was not amenable to treatment as a juvenile. Since the record is devoid of any basis for such a finding, the court was in error in acceding to the Commonwealth's request for transfer.

*Id.* at 702 (emphasis added).

The case at bar is readily distinguishable from **Greiner**. First, **Greiner** was decided under an earlier version of the Act, which has since been amended and expanded to include numerous factors—including the impact on

---

The court finds that there is a *prima facie* case that the child committed the delinquent act alleged, and that the delinquent act would be considered a felony if committed by an adult, and the court finds that there are reasonable grounds to believe that: (i) the child is not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities, in determining this the court may consider age, mental capacity, maturity, previous record and probation or institutional reports; and (ii) the child is not committable to an institution for the mentally retarded or mentally ill; and (iii) the interests of the community require that the child be placed under legal restraint or discipline or that the offense is one which would carry a sentence of more than three years if committed as an adult.

11 Pa.C.S.A. § 50-325(a)(4) (Supp. 1978-79).

the victim and community, the degree of the child's culpability, the nature and circumstances of the offense, and the threat to individual or public safety—that were not contemplated under the prior version of the statute. Amenability to treatment is but one factor to be considered. Moreover, as noted above, section 6355(a) does not set forth the weight to be afforded to each factor. *Sanders*, 814 A.2d at 1251. Rather, the decertification court is free to weigh them as it deems appropriate. *Id.*

Second, it is clear from the record that, unlike in *Greiner*, the trial court did not rely solely on the nature of Castro's crime in declining to decertify his case. Rather, the trial court properly considered all of the relevant statutory factors. In doing so, the court gave great weight to the testimony of the victims and their mothers, who described the lasting and significant impact that Castro's actions have had on their lives. The court also weighed the impact of Castro's crime on the broader community, noting the traumatic psychological effects on his fellow students at Pottsgrove High School, as well as on their parents and teachers. The court considered the nature and circumstances of Castro's offense, noting in particular the disproportionate nature of his bringing a gun to a fistfight and shooting at his victims as they fled. Finally, the court also considered the report of Commonwealth expert Dr. Mapes, as well as the report and testimony of defense expert Dr. Dattilio. The court acknowledged both doctors' conclusions that Castro was amenable to treatment. However, the court was not convinced of the potential for the

success of treatment within the confines of the juvenile system, in light of the "adequacy and duration of the dispositional alternatives available[.]" *Id.*

Ultimately, the court concluded that, although Castro might be amenable to treatment, the temporal limitations of the juvenile justice system were insufficient to ensure he receives the long-term rehabilitative treatment recommended by the experts who evaluated him, and the post-release monitoring the court deemed necessary. The court believed that the Youthful Offenders Program within the adult system, which spans a lengthier period of time, could provide Castro with the best chance of successful treatment, as well as the necessary supervision following his eventual release. The court's conclusions are supported by the record and are neither arbitrary nor capricious. As such, the court did not grossly abuse its discretion in denying Castro's request for decertification. *Smith*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/21